**FOR THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | * | **CHAPTER 13 BANKRUPTCY** |
| **FERNISA PARKER,** | * | **CASE NO.: 05-12674** |
| **DEBTOR,** | * | |
| **FERNISA PARKER,** | * | |
| **PLAINTIFF,** | * | |
| **VS.** | * | **ADVERSARY PROCEEDING** |
| **PIONEER CREDIT COMPANY OF** | * | **CASE NUMBER: 06-01139** |
| **ALABAMA, INC., d/b/a 1st SOUTH** | | |
| **EAST ACCEPTANCE CORPORATION,** | * | |
| **DEFENDANT.** | * | |

**Second Amended**

**Designation of contents for Inclusion in Record on Appeal, and Statement of Issues on Appeal**

The Appellant, **PIONEER CREDIT COMPANY OF ALABAMA, INC., d/b/a 1st SOUTH EAST ACCEPTANCE CORPORATION**, files this Amended Designation of Contents for Inclusion in the Record on Appeal, and Statement of Issues on Appeal:

The following shall be included in the record on appeal:

1.    Debtor's Chapter 13 Plan filed in the original bankruptcy case.

2.    Joint Consent Motion Lifting Stay filed on December 8, 2005 between Debtor and 1st South East Acceptance Corporation in the original bankruptcy case.

3.    Consent Order signed by Judge Sawyer and entered of record on December 29, 2005 in the original bankruptcy case.

4.    Motion for Relief from Stay filed by 1st South East Acceptance Corporation on March 23, 2006 in the original bankruptcy case.

5.    Amended Motion for Relief from Stay filed by 1st South East Acceptance Corporation on April 3, 2006 in the original bankruptcy case.

6.     Order granting relief from stay entered on April 27, 2006 in the original bankruptcy case.

7.     Summons and Complaint filed in the District Court of Coffee County, Alabama on May 11, 2006. (Pre-trial Disclosure Exhibit of Debtor).

8.     Process of Garnishment to Pilgrim's Pride filed in District Court of Coffee County, Alabama on July 5, 2006. (Pre-trial Disclosure Exhibit of Debtor).

9.     Adversary Complaint filed on July 14, 2006.

10.    Application for Preliminary Injunction against Defendant filed on July 14, 2006.

11.    Preliminary Injunction effective at 10:20 a.m. on July 19, 2006.

12.    Motion to Dismiss Adversary Proceeding filed on August 15, 2006.

13.    Notice of Hearing filed on August 16, 2006.

14.    Order on Motion to Dismiss the Adversary Proceeding entered on September 13, 2006.

15.    Answer filed on October 31, 2006 in the Adversary Proceeding.

16.    Motion filed on October 31, 2006 in the Adversary Proceeding.

17.    Submission of Pre-trial Disclosure Documents filed on May 2, 2007 and filed on May 3, 2007.

18.    Summons issued to Pilgrim's Pride regarding Garnishment of Plaintiff's wages dated August 22, 2006.  (Pre-trial Disclosure Exhibit of Creditor).

19.    Garnishee Release filed in District Court of Coffee County, Alabama on July 28, 2006.  (Pre-trial Disclosure Exhibit of Creditor).

20.    Garnishee Answer filed in District Court of Coffee County, Alabama on August 29, 2006.  (Pre-trial Disclosure Exhibit of Creditor).

21.    Opinion entered on June 29, 2007.

22.    Judgment entered on June 29, 2007.

23.    Motion to Reconsider/Set Aside filed on July 6, 2007.

24.    Order on Motion to Reconsider/Set Aside entered on July 9, 2007.

25.    Notice of Appeal filed on July 18, 2007.

26.    Transcript of Proceedings of May 9, 2007 before Judge Dwight Williams.

Statement of the Issues:

1. Whether the lower court's award of $500.00 actual damages to the Plaintiff was arbitrary and thus reversible error.

2. Whether the lower court's award of $12,791.45 as attorney fees was improper and reversible error.

Designation of Attorneys of interest in the action hereby served with the Designation

Honorable Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, Alabama 36104

Honorable Curtis C. Reding
Chapter 13 Trustee
Post Office Box 173
Montgomery, Alabama 36101-0173

Honorable Michael Brock
Honorable David Poston
Honorable Gary Stout
Attorneys for Plaintiff
Post Office Drawer 311167
Enterprise, Alabama 36331

_/s/Thadius W. Morgan, Jr._____
THADIUS W. MORGAN, JR. (MOR072)
Attorney for Defendant

OF COUNSEL:
Thadius W. Morgan, Jr.
P.O. Box 310396
Enterprise, AL 36331
(334) 347-8130 Telephone
(334) 347-0038  Fax
twmjr_law@yahoo.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **FERNISA L. PARKER** | ) | **CHAPTER 13** |
| Debtor | ) | |
| | ) | **CASE NO.** |

### CHAPTER 13 PLAN AS PROPOSED OR MODIFIED

1. **PAYMENTS TO TRUSTEE**: The Debtor(s) shall pay $23.00 to the Chapter 13 Trustee each **WEEK**.

2. **DISTRIBUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:**

   a: **ADMINISTRATIVE CLAIMS** under 11 U.S.C. § 503(b). The debtor's attorney fee is $1,600.00.

   b: **SECURED CLAIMS**:

   (1). Secured claims being paid through the Trustee:

| Creditor | Amount of Debt | Value of Collateral | Annual Interest | Capitalized Value | Specified Monthly Pmt |
|---|---|---|---|---|---|
| NONE | | | | | |

   (2). Pre-petition defaults estimated to be as stated in the amount of arrearage. The trustee shall pay the claim as filed or in an amount determined by the bankruptcy court following the debtor's objection to claim.

| Creditor | Amount of Arrearage | Annual Interest | Date Post-Petition Payment Resume | Specified Monthly Pmt |
|---|---|---|---|---|
| NONE | | | | |

   (3). Secured Claims to be paid directly by the debtor or other party to the creditor:

| Creditor | Amount of Debt | Value of Collateral | Contractual Payment |
|---|---|---|---|
| Citifinancial | $4,419.34 | $4,520.00 | $126.00 |

   (4). Secured claims to be satisfied by the surrender and return of collateral:

| Creditor | Description of Collateral | Amount of Debt | Value of Collateral |
|---|---|---|---|
| 1ST Southeast Acceptance | 1995 Chevrolet Impala SS | $8,369.52 | $8,560.00 |

   c: **PRIORITY CLAIMS** (11 U.S.C. § 507(a)(2) to (8)):

| Creditor | Amount of Debt | Interest | Capitalized Value | Specified Monthly Payment |
|---|---|---|---|---|
| NONE | | | | |

**CHAPTER 13 PLAN OR SUMMARY - Continued**

d:  **SPECIALLY CLASSIFIED UNSECURED CLAIMS:**

| Creditor | Basis for Classification | Amount of Debt Specially Classified | Specified Monthly Payment |
|---|---|---|---|
| NONE | | | |

e:  **UNSECURED CLAIMS**.  This is a pot plan.  The debtor shall pay $  **3,000.00**   to unsecured creditors.  If unsecured creditors are to receive less than 100% of their claims, the debtor(s) shall pay all projected disposable income to the trustee for at least 36 months.

3.  **DURATION OF PLAN**:

The expected duration of this plan is 50 months.

4.  **PROVISIONS FOR POST-PETITION CLAIMS ARE AS FOLLOWS**:  Pursuant to 11 U.S.C. § 1305, if a post-petition creditor files a proof of claim for a debt that arose against the debtor(s) after the filing of the instant chapter 13 bankruptcy case, said claim  shall be allowed or disallowed under § 502 of Title 11, United States Code.  A post-petition unsecured creditor, or post-petition judgment creditor, who files a proof of claim, shall receive a pro rata distribution equivalent to that percent specified in paragraph 2(e) of this chapter 13 plan.

5.  **PROVISIONS FOR PROPERTY OF THE ESTATE (See 11 U.S.C. §§ 1303; 06; & 27)**  :  As allowed by 11 U.S.C. § 1327(b), property of the estate shall remain property of the estate throughout the duration of this chapter 13 bankruptcy case and shall vest in the debtor(s) only at the time a discharge is entered pursuant to 11 U.S.C. § 1328.

6.  **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES (See 11 U.S.C. §§ 365 & 1322(b)(7)**:
All executory contracts are expressly **assumed**.

7:  **PROVISIONS FOR FUTURE DISPOSABLE INCOME (See 11 U.S.C. §§ 1325(b)(1); (b)(2)**:  The Debtor(s) anticipate no job changes or significant raises in salary over the next 36 month period.  If said disposable income increases, the Debtor(s) understand the mandates of 11 U.S.C. § 1325(b)(1)(B) and shall increase plan payments accordingly.

8.  **Other Provisions:**

If the debtor(s) are entitled to any pre-petition lawsuit proceeds, any and all lawsuit proceeds received, less any allowable exemptions, shall be applied in furtherance of the debtor(s)' chapter 13 case.

**CHAPTER 13 PLAN OR SUMMARY** - Continued

Dated:  <u>October 5, 2004</u>

<u>FERNISA L. PARKER</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| FERNISA L. PARKER, | * | CHAPTER 13 |
| | * | |
| | * | CASE NO: 05-12674 |
| | * | |
| Debtor. | * | |

## CONSENT AGREEMENT FOR LIFTING OF AUTOMATIC STAY

The Debtor(s), through his (their) attorney, and Trustee do hereby consent that the automatic stay imposed by Section 362 of the Bankruptcy Code can be lifted to permit 1st South East Acceptance Corporation, a corporation, herein Creditor, to repossess and liquidate or otherwise proceed against the following property securing the debt of Debtor(s) to Creditor:

**1995 Chevrolet Impala VIN#1G1BL52P9SR140367**

The undersigned consent to the above to be filed with the Bankruptcy Clerk for an appropriate Order to be issued by the Bankruptcy Court.

Respectfully submitted this 8th day of December, 2005.

_____
TRUSTEE

_____
DAVID POSTON
Attorney for Debtor
P. O. Drawer 6504
Dothan, Alabama 36302
(334) 793-6288

_____
THADIUS W. MORGAN, JR. (MOR072)
Attorney for 1st South East Acceptance Corporation
P.O. Box 310396
Enterprise, Alabama 36331
(334) 347-8130

NOV 28 2005



**STATE OF ALABAMA**
DEPARTMENT OF REVENUE

GREAT SEAL

## CERTIFICATE OF TITLE FOR A VEHICLE

4812

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 32729144 | 1G1BL52P9SR140367 | 01 | 06/24/2004 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV AL TITLE NO |
|---|---|---|---|---|
| 1995 | CHEVY | IMPALA | 4D | |

| CYL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 08 | | XX | | 04/27/2004 | 1 | SIL | 0115010 |

NAME(S) AND MAILING ADDRESS OF OWNER(S)

PARKER CHRISTIAN OR FERNISA OR SANDERS JOHNNIE

100 DIXIE DR APT 6
ENTERPRISE    AL 36330

MAIL TO
1ST SOUTH EAST ACCEPTANCE
P O BOX 311127
ENTERPRISE    AL 36331-1127

RESIDENT ADDRESS IF DIFFERENT

LEGEND(S)  ODOMETER READING IS THE ACTUAL MILEAGE

RELEASE OF LIEN
The holder of Lien, on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

_____
First Lienholder

By _____
Signature of Authorized Agent

Date _____

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE    04/27/2004
1ST SOUTH EAST ACCEPTANCE CORP
P O BOX 311127
ENTERPRISE        AL 36331

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

_____
Second Lienholder

By _____
Signature of Authorized Agent

Date _____

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) shown hereon, if any. But said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

CONTROL NUMBER
30035016

COMMISSIONER OF REVENUE

KEEP IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE

HOLD TO LIGHT TO VIEW WATERMARK

HOLD TO LIGHT TO VIEW WATERMARK

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

IN RE:                          *
                                *
**FERNISA L. PARKER,**          *          **CHAPTER 13**
                                *
                                *          **CASE NO: 05-12674**
                                *
         **Debtor.**            *

_____

**CONSENT ORDER TERMINATING STAY**

Upon consideration of the motion for relief from stay filed by 1st South East Acceptance Corporation and the consent of the debtor and the chapter 7 trustee to the relief requested by the motion, it is

**ORDERED** that the automatic stay imposed by 11 U.S.C. § 362(a) is TERMINATED to allow 1st South East Acceptance Corporation to enforce its lien on the 1995 Chevrolet Impala described in the motion.

Done this 29th day of December, 2005.

                                   /s/ William R. Sawyer
                                   United States Bankruptcy Judge

CC: Debtor
    David Poston, Attorney for Debtor
    Thadius W. Morgan, Jr., Attorney for Creditor
    Curtis C. Reding, Trustee

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO.: 05-12674** |
| | ) | |
| **FERNISA L. PARKER,** | ) | **CHAPTER 13** |
| | ) | |
| Debtor. | ) | |

**PURSUANT TO LBR 4001-1, THE MOVING PARTY SEEKS RELIEF FROM THE AUTOMATIC STAY. UNLESS A RESPONSE IS FILED AND SERVED UPON THE MOVING PARTY WITHIN 20 DAYS FROM THE DATE OF SERVICE OF THIS MOTION, THE MOTION MAY BE GRANTED BY THE COURT WITHOUT FURTHER NOTICE OR HEARING.**

## MOTION FOR RELIEF FROM STAY

COMES NOW 1st South East Acceptance Co. and moves the Court for the entry of an order granting it relief from the automatic stay and for grounds says as follows:

1.      This Court has jurisdiction over this matter pursuant under 28 U.S.C. § 1334, as referred under 28 U. S. C. § 157, and it constitutes a "core proceeding" within the meaning of the latter statute.

2.      This Motion is made pursuant to Bankruptcy Rule 4001, and in conformity with Bankruptcy Rule 9014.

3.      Movant is precluded by the force and effect of paragraph (4) and (5) of § 362(a) of the bankruptcy Code from enforcing movant's lien against property of the estate and property of the Debtor.

4.      On April 27, 2004, Debtor executed and delivered a Retail Installment Contract and Security Agreement wherein she promised to pay to movant a total of $12554.28 payable in 36 consecutive monthly installments of $348.73. The first payment was to be made on June 5, 2004.

5.      To secure all payments under the contract, Debtor granted 1st South East Acceptance a security interest in one 1995 Chevrolet Impala automobile bearing VIN# 1G1BL52P9SR140367.

6.    1st South East Acceptance has a perfected security interest in the above-described property.

7.    On October 14, 2005, Debtor filed a Chapter 13 bankruptcy petition listing 1st South East Acceptance as a secured creditor whose debt was to be cured through the surrender of the vehicle.

8.    The current balance on the Debtor's account is $6598.24.

9.    The Debtor has failed to reaffirm, redeem or surrender said property as required by the Code. The debtor does not have equity in said property and it is not necessary for an effective reorganization. Movant is and will continue to suffer irreparable harm from continuation of the 11 U. S. C. § 362 automatic stay.

10.    It appears that the Debtor has disposed of the collateral and is in no position to surrender the collateral to Creditor as stated in her Chapter 13 Plan.

11.    Debtor has perpetrated a fraud upon the Court and continues to defraud the Court by her refusal to surrender the collateral to the Creditor.

WHEREFORE, after notice and a hearing, 1st South East Acceptance requests the entry of an order granting it relief from the automatic stay, allowing Creditor to file suit against Debtor in State Court to recover monies owed under the security agreement.

Respectfully submitted this the 23rd day of March, 2006.


/s/ Thadius W. Morgan, Jr.
THADIUS W. MORGAN, JR. (MOR072)
Attorney for Creditor, 1st South East Acceptance

OF COUNSEL:
Thadius W. Morgan, Jr.
P.O. Box 310396
Enterprise, AL 36331
(334) 347-8130

## **CERTIFICATE OF SERVICE**

I, Thadius W. Morgan, Jr., hereby certify that I have this date served a copy of the above and foregoing pleading upon the following counsel of record either by electronic or standard first class mail on March 23, 2006.

David G. Poston                      Curtis C. Reding
Attorney for Debtor                  Bankruptcy Trustee
Post Office Drawer 6504              Post Office Box 173
Dothan, Alabama 36302                Montgomery, Alabama 36101


        _/s/ Thadius W. Morgan, Jr._
        Of Counsel

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-12674 |
| | ) | |
| FERNISA L. PARKER, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | |

☐ **Movant is willing to consider an adequate protection agreement.**
The motion will be served with a form for a proposed order agreeable to the moving party, leaving blank, where appropriate, amounts to be arrived at by way of negotiation or determined upon further factual development.

X **Movant is not willing to consider an adequate protection agreement.**
Pursuant to LBR 4001-1, the moving party seeks relief from the Automatic Stay. Unless a response is filed and served upon the moving party within 20 days from the date of service of this motion, the motion may be granted by the Court without further notice or hearing.

## MOTION FOR RELIEF FROM STAY

COMES NOW1st South East Acceptance Co. and moves the Court for the entry of an order granting it relief from the automatic stay and for grounds says as follows:

1.    This Court has jurisdiction over this matter pursuant under 28 U.S.C. § 1334, as referred under 28 U. S. C. § 157, and it constitutes a "core proceeding" within the meaning of the latter statute.

2.    This Motion is made pursuant to Bankruptcy Rule 4001, and in conformity with Bankruptcy Rule 9014.

3.    Movant is precluded by the force and effect of paragraph (4) and (5) of § 362(a) of the bankruptcy Code from enforcing movant's lien against property of the estate and property of the Debtor.

4.    On April 27, 2004, Debtor executed and delivered a Retail Installment Contract and Security Agreement wherein she promised to pay to movant a total of $12554.28 payable in 36 consecutive monthly installments of $348.73. The first payment was to be made on June 5, 2004.

5.    To secure all payments under the contract, Debtor granted 1st South East

Acceptance a security interest in one 1995 Chevrolet Impala automobile bearing VIN# 1G1BL52P9SR140367.

6.    1st South East Acceptance has a perfected security interest in the above-described property.

7.    On October 14, 2005, Debtor filed a Chapter 13 bankruptcy petition listing 1st South East Acceptance as a secured creditor whose debt was to be cured through the surrender of the vehicle.

8.    The current balance on the Debtor's account is $6598.24.

9.    The Debtor has failed to reaffirm, redeem or surrender said property as required by the Code. The debtor does not have equity in said property and it is not necessary for an effective reorganization.    Movant is and will continue to suffer irreparable harm from continuation of the 11 U. S. C. § 362 automatic stay.

10.    It appears that the Debtor has disposed of the collateral and is in no position to surrender the collateral to Creditor as stated in her Chapter 13 Plan.

11.    Debtor has perpetrated a fraud upon the Court and continues to defraud the Court by her refusal to surrender the collateral to the Creditor.

WHEREFORE, after notice and a hearing, 1st South East Acceptance requests the entry of an order granting it relief from the automatic stay, allowing Creditor to file suit against Debtor in State Court to recover monies owed under the security agreement.

Respectfully submitted this the 29th day of March, 2006.

_/s/ Thadius W. Morgan, Jr._
THADIUS W. MORGAN, JR. (MOR072)
Attorney for Creditor, 1st South East Acceptance

OF COUNSEL:
Thadius W. Morgan, Jr.
P.O. Box 310396
Enterprise, AL 36331
(334) 347-8130

## CERTIFICATE OF SERVICE

I, Thadius W. Morgan, Jr., hereby certify that I have this date served a copy of the above and foregoing pleading upon the following counsel of record either by electronic or standard first class mail on March 29, 2006.

David G. Poston                     Curtis C. Reding
Attorney for Debtor                 Bankruptcy Trustee
Post Office Drawer 6504             Post Office Box 173
Dothan, Alabama 36302               Montgomery, Alabama 36101


_/s/ Thadius W. Morgan, Jr._
Of Counsel

# UNITED STATES BANKRUPTCY COURT

## Middle District of Alabama

In re:                                                    Case No.: 05−12674
**Fernisa L Parker**                                      Chapter: 13
     Debtor

### ORDER TERMINATING STAY

Upon consideration of the motion of the creditor, *1st South East Acceptance Co. ,* for relief from the stay imposed by 11 U.S.C. § 362(a) the court concludes that no response to the motion has been filed within the time allowed by M.D. AL L.B.R. 4001−1 or a response was filed consenting to the motion and therefore the motion should be **GRANTED** . Accordingly, it is

**ORDERED** that the stay in this case with respect to this creditor, to permit enforcement of a lien against the property of the estate or of the debtor described in the motion, is TERMINATED.

Dated:  4/27/06

William R. Sawyer
United States Bankruptcy Judge

| State of Alabama<br>Unified Judicial System | **SUMMONS** | Case Number |
|---|---|---|
| Form C-34    Rev. 6/88 | **-CIVIL-** | **DV-2006-** |

IN THE ___**DISTRICT**___ COURT OF ___**COFFEE**___ **ALABAMA**

**1ST SOUTH EAST ACCEPTANCE CORPORATION** V. **FERNISA PARKER, CHRISTIAN PARKER & JOHNNIE SANDERS**
Plaintiff                                                                          Defendant

NOTICE TO ___**FERNISA PARKER, 106 RADIO STREET, ENTERPRISE, ALABAMA 36330**___

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY **THADIUS W. MORGAN, JR.** WHOSE ADDRESS IS **P.O. BOX 310396, ENTERPRISE, AL 36331.**

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___**14**___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure

☐   You are hereby commanded to serve this summons and a copy of the Complaint in this action upon the defendant.

☐   Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date: _____     _____ By: _____
                              Clerk/Register

☐   Certified mail is hereby requested.

_____
            Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐   Return receipt of certified mail received in this office on _____
                                             Date

☐   I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama on _____

DATE _____     Server's Signature _____

Address of Server _____     Type of Process Server _____

FILED
J.M. Counts
Court Clerk
Coffee Co. AL

AV50109

ALABAMA JUDICIAL DATA CENTER
COFFEE               COUNTY

ORDER FOR SERVICE AND RETURN

BY 2006 000080 00
B PAUL SHERLING

IN THE DISTRICT COURT OF COFFEE          COUNTY

1ST SOUTH EAST ACCEPTANCE CORP VS PERNTA PARKER, ET AL

SERVE ON:  0001

PILGRIMS PRIDE, INC
4599 COUNTY ROAD 659
ENTERPRISE          AL  36330-0000



NOTES:
GARNISHMENT AND ANSWER FORM

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

07/07/2006  DATE              CLERK: JAMES M COUNTS          BY:____
                             P. O. BOX 311284
                             ENTERPRISE AL  36331-1284
                             (334)347-2510

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
DOCUMENT IN ___Coffee___ COUNTY, ALABAMA
TO:

Jo Ann                                  SIGNATURE OF SERVER

NAME & ADDRESS ABOVE                    DATE  8-22-06

OPERATOR: DEK
PREPARED: 07/07/2006

UNABLE TO LOCATE  7/7/06
THIS DATE_____
☐ IMPROPER ADDRESS
☐ MOVED
☑ OTHER  No Longer Employed
         Here
COFFEE COUNTY SHERIFF'S DEPT.
BY_____
         DEPUTY SHERIFF

CERTIFIED TO BE A TRUE COPY
ATTEST James M Counts
         REGISTER/CLERK
CIRCUIT COURT, COFFEE COUNTY, AL

cc: Diane

| State of Alabama<br>Unified Judicial System<br>Form C-21 (Front)    Rev.10/99 | **PROCESS OF GARNISHMENT** | Case Number<br>DV-2006-88 |
|---|---|---|

**IN THE**     DISTRICT     **COURT OF**     COFFEE     **COUNTY, ALABAMA**

**NAME AND ADDRESS OF PLAINTIFF (Person Asserting Claim)**
1ST SOUTH EAST ACCEPTANCE CORPORATION
P.O. BOX 311127, ENTERPRISE, ALABAMA 36331

**NAME AND ADDRESS OF DEFENDANT** *(Person Whose Property is Subject to Garnishment)*
Fernisha Parker  SSN: 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
106 Radio Street, Enterprise, Alabama 36330

**NAME AND ADDRESS OF ATTORNEY FOR PLAINTIFF**
Thadius W. Morgan, Jr.
Post Office Box 310396, Enterprise, Alabama 36331

DATE OF JUDGMENT: June 16, 2006

JUDGMENT AMOUNT: $ 10054.70
COSTS: $ 30.00
LESS CREDIT: $
OTHER: $
TOTAL: $ 10084.70

**NAME AND ADDRESS OF GARNISHEE**
Pilgrims Pride, Inc.
4693 County Road 636, Enterprise, Alabama 36330

**AFFIDAVIT**

A. I make oath that I have obtained the above judgment and believe the named garnishee is or will be indebted to the named defendant or has or will have effects of the defendant under the garnishee's control. I believe that a Process of Garnishment against the garnishee is necessary to obtain satisfaction of the judgment.

B. If the garnishment is for wages, salary or other compensation, I further make oath that the amount to be withheld must be:
[✓] 25% of disposable earnings for the week OR the amount by which disposable earnings for the week exceed 30 times the federal minimum hourly wage in effect at the time the earnings are payable, WHICHEVER IS LESS,
[ ] 20% of disposable earnings for the week OR the amount by which disposable earnings for the week exceed 30 times the federal minimum hourly wage in effect at the time the earnings are payable, WHICHEVER IS LESS, which amount is in compliance with the instructions on the reverse side of this form.

C. I hereby request disbursement of amounts periodically paid into court pursuant to this garnishment.

Sworn to and subscribed before me this _____ 30th _____
Day of _____ June, 2006 _____

Notary Public _____ (Signature)      Affiant / Attorney (Signature)

**WRIT OF GARNISHMENT**

**TO ANY LAW ENFORCEMENT OFFICER OF THE STATE OF ALABAMA:**
You are hereby commanded to serve this Process of Garnishment on the GARNISHEE _____ Pilgrims Pride, Inc. _____
and a copy on the defendant, _____ Fernisha Parker _____ and make proper return to this court.

**NOTICE TO DEFENDANT: READ THE IMPORTANT INFORMATION ON THE BACK OF THIS FORM (Regarding your Rights).**
**NOTICE TO GARNISHEE: YOU ARE THE GARNISHEE IN THE ABOVE ACTION.**

You must complete and file the enclosed Answer form within thirty (30) days from service of process. If you fail to file an Answer, the plaintiff can proceed for judgment against you for the amount of the claim, plus costs. Mailing the Notarized Answer Form to the clerk of the court at the address below constitutes making a proper appearance in the court. YOU MUST ANSWER:
(1) Whether you are or were indebted to the defendant at the time you received this process, or when you make your answer, or during the intervening time, or
(2) Whether you will be indebted to the defendant in the future by existing contract, or
(3) Whether by existing contract you are liable to the defendant for the delivery of personal property or for the payment of money, or
(4) Whether you have in your possession or control, money or effects belonging to the defendant.
You are commanded to retain the amount indicated above wages, salary or other compensation due or which will become due to the defendant for such period of time as is necessary to accumulate the sum $ _____ 10084.70 _____ (Judgment and costs). You are required, after a period of 30 days from the first retention of any sum from the defendants wages, salary, or other compensation, to begin paying the moneys withheld into court as they are deducted or withheld and continue to do so on a monthly or more frequent basis until the full amount is withheld. If employment of the defendant is terminated BEFORE the sum is accumulated, you are required by law to report the termination and pay into court within 15 days AFTER termination, all sums withheld in compliance with this garnishment. *(See Reverse Side for Instructions on Garnishments).* If you have in your possession or control property or money belonging to the defendant, which is NOT wages, salary or other compensation, you are further commanded to hold the property or money subject to orders of this court.,

Date issued: _____ 7-6-06 _____

Clerk _____ James M Courts _____ By: _____
Address: Post Office Box 311284, Enterprise, Al 36331     Deputy Clerk

this process was executed by serving a copy on (Garnishee) _____ Pilgrims Pride, Inc. _____
_____ on (Date) _____

_____ Fernisha Parker _____. Service on (Defendant)
Served by: _____ on (Date) _____
Title: _____

COURT RECORD (Original)     PLAINTIFF (Copy)     DEFENDANT (Copy)     GARNISHEE (Copy)

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NUMBER |
| FERNISA PARKER, | ) | 05-12674 |
| | ) | (CHAPTER 13 CASE) |
| DEBTOR | ) | |

**************************************************************************

| | |
|---|---|
| FERNISA PARKER, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | )     AP# _____ |
| | ) |
| PIONEER CREDIT COMPANY OF ALABAMA, INC., | ) |
| D/B/A FIRST SOUTHEAST ACCEPTANCE | ) |
| CORPORATION, | ) |
| | ) |
| DEFENDANT. | ) |

## <u>COMPLAINT</u>

COMES NOW the Debtor, Fernisa Parker, as Plaintiff, by and through her undersigned attorneys, and respectfully state the grounds for her complaint against the Defendant as follows, to-wit:

1.      This is a complaint for violation of the automatic stay as afforded by 11 U.S.C. § 362 (a) & (h); and a complaint for declaratory relief.

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157.

4.      The Plaintiff is a resident citizen of the State of Alabama.

5.      The Defendant, Pioneer Credit Company of Alabama, Inc. d/b/a First Southeast Acceptance Corporation (hereinafter, "Pioneer") is a Tennessee corporation.

6.      On October 14, 2005, the above-named Plaintiff, as Debtor, filed a voluntary petition under Chapter 13 of Title 11, United States Code.  Said case was filed in the United States Bankruptcy Court for the Middle District of Alabama, Southern Division, Case number 05-12674.

7.      Relief was granted pursuant to 11 U.S.C. § 362(a) on October 14, 2005.   Said relief also initiated an automatic stay which prohibits certain collection activity by creditors.

8.      The Debtor filed a list of secured claim holders (Schedule D) which included a debt to First Southeast Acceptance Corporation, a/k/a Defendant, Pioneer, in the approximate amount of $8,369.52.  The debt to Defendant was secured by a 1995 Chevrolet Impala SS, having an approximate value of $8,560.00.

9.      On or about October 14, 2005, the Plaintiff, acting in her capacity as Debtor, filed a Chapter 13 plan of debt adjustment.  The plan provided for the secured claim of Defendant, Pioneer, to be "satisfied by the surrender and return of collateral," to wit: the 1995 Chevrolet Impala SS.

10.     On or about December 8, 2005, the Honorable David G. Poston, acting in his capacity as Debtor's bankruptcy attorney, and the Honorable Thadius W. Morgan, acting in his capacity as attorney for First Southeast Acceptance Corporation, a/k/a Defendant, Pioneer, entered into a consent agreement allowing for Defendant, Pioneer, to repossess and liquidate the 1995 Chevrolet Impala SS.

11.     On or about December 29, 2005, the Honorable William R. Sawyer entered an Order terminating the automatic stay imposed by 11 U.S.C. § 362 to allow Defendant, Pioneer, to enforce its lien on the 1995 Chevrolet Impala SS.

12.     On or about January 25, 2006, the Honorable William R. Sawyer confirmed the Debtor's Chapter 13 plan, which further ratified the Plaintiff's desire to surrender the 1995 Chevrolet Impala SS.

13.     On or about March 23, 2006, Defendant, Pioneer, filed a Motion For Relief From Stay.

14.     On or about April 3, 2006, Defendant, Pioneer, filed an Amended Motion For Relief From Stay.

15.     On or about April 27, 2006, the Honorable William R. Sawyer entered a second Order terminating the automatic stay, and "ordered that the stay in [the bankruptcy] case with respect to [Defendant], to permit enforcement of a lien against the property of the estate or of the Debtor described in the motion is TERMINATED."

16.     On or about May 11, 2006, the Defendant, Pioneer, filed a Complaint bearing case number DV2006-88 in the District Court of Coffee County, Alabama, Enterprise Division (hereinafter "the Complaint").

17.     The Complaint contained three counts seeking a money judgment against the Plaintiff, Fernisa Parker.  The amount sought included a principal and interest balance of $7,795.76 plus an attorney fee in the amount of $1,948.94.

18.     The Complaint did not seek possession of the 1995 Chevrolet Impala SS.

19.     On or about June 19, 2006, the Defendant obtained a Default Judgment, against the Plaintiff, in the amount of $10,084.70.

20.     On or about July 6, 2006, the Defendant served a Process of Garnishment on the Plaintiff's former employer, Pilgrim's Pride, Inc.

21.     11 U.S.C. § 362(a)(3) prohibits "any act to obtain possession of property of the estate...or to exercise control over property of the estate."

22.     11 U.S.C § 362(a)(6) prohibits any "act to recover a claim against the Debtor that arose before the commencement of the case...."

23.     During pendency of the instant Chapter 13 bankruptcy case, the above-referenced Defendant did not obtain termination, modification, or relief from the effects of the automatic stay as it pertains to the Plaintiff's wages or the Plaintiff's property other than the 1995 Chevrolet Impala SS.

24.     In spite of the automatic stay, the Defendant is attempting to proceed against the Plaintiff's property, other than the 1995 Chevrolet Impala SS, in violation of this Honorable Court's prior Orders terminating the automatic stay in regard to the 1995 Chevrolet Impala SS, and in violation of the bankruptcy code.

## COUNT I - VIOLATION OF AUTOMATIC STAY

25.     The Plaintiff adopts and incorporates paragraphs 1 through 24 as  if fully set out herein.

26.     The Defendant, Pioneer, by filing a Proof of Claim, and by filing two motions for relief from the automatic stay, evidence its knowledge of the order for relief and the imposition of the automatic stay.

27.     Despite the Honorable William R. Sawyer's two court Orders terminating the automatic stay only as it pertains to the 1995 Chevrolet Impala SS, the Defendant willfully violated the automatic stay by commencing a state court action, seeking a Default Judgment, and seeking garnishment of the Plaintiff's wages.

28.     Because of the Defendant's willful violation of the automatic stay, the Plaintiff suffered damages consisting of, but not limited to, emotional distress, embarrassment, harassment, lost employment in having to address Defendant's illegal lawsuit, out of pocket expenses, and miscellaneous other expenses.

29.     Because of the Defendant's actions, the Plaintiff was also forced to hire counsel to prosecute this claim. 11 U.S.C. § 362(h) provides that any individual injured by a defendants willful violation shall recover attorney fees, costs, and in certain circumstances, punitive damages.

30.     The Defendant's conduct rises to the level of willfulness.

## COUNT II - DECLARATORY RELIEF

31.     The Plaintiff adopts and incorporates paragraphs 1 through 30 as if fully set out herein.

32.     The Defendant's actions in violating the automatic stay resulted in a judgment under state court action DV 2006-88.

33.     Obtaining a judgment in violation of the automatic stay renders the core proceeding void and also renders any subsequent judgment void *ab initio*.

34.     Upon information and belief, the Defendant pursuaded the Coffee County District Judge to enter the Default Judgment by presenting evidence that the automatic stay had terminated.

35.     In fact, the automatic stay remains in effect as to all of the Plaintiff's property other than the 1995 Chevrolet Impala SS.

36.     The Plaintiff requests this Honorable Court to void any judgment entered against the Plaintiff.

**WHEREFORE,** the Plaintiff requests this Honorable Court to enter judgment against the Defendant, Pioneer Credit Company of Alabama, Inc. d/b/a First Southeast Acceptance Corporation for the following:

a)     Actual damages;

b)    Punitive damages for the Defendant's willful violation of the automatic stay;

c)    Costs and reasonable attorney fees pursuant to 11 U.S.C. § 362 (k) (1);

d)    Declaratory relief declaring the state court judgment bearing case number DV 2006-88, in the District Court of Coffee County, Alabama void *ab initio*; and,

e)    For such other further relief that is just.

Respectfully submitted this **14**th day of **July**, 2006.


BROCK & STOUT


*/s/ Michael D. Brock*
Michael D. Brock, Esq.
David G. Poston, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email christal02@centurytel.net

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                                           )
                                                 )        BANKRUPTCY CASE NUMBER
FERNISA PARKER,                                  )        05-12674
                                                 )        (CHAPTER 13 CASE)
        DEBTOR                                   )
**********************************************************************************
FERNISA PARKER,                                  )
                                                 )
        PLAINTIFF,                               )
                                                 )
VS.                                              )        AP# 06-1139
                                                 )
PIONEER CREDIT COMPANY OF ALABAMA, INC., )
D/B/A FIRST SOUTHEAST ACCEPTANCE                 )
CORPORATION,                                     )
                                                 )
        DEFENDANT.                               )

## APPLICATION FOR PRELIMINARY INJUNCTION

COMES NOW, the Debtor, as Plaintiff, in the above-styled adversary proceeding, and seeks a preliminary injunction against the Defendant on the following grounds, to wit:

1.      The Plaintiff, as Debtor, filed for Chapter 13 bankruptcy relief on October 14, 2005.

2.      The Plaintiff is a resident citizen of the State of Alabama.

3.      The Defendant is a Tennessee corporation.

4.      During the course of the Plaintiff's Chapter 13 bankruptcy case, the Defendant sought and obtained relief from the automatic stay as it pertains to a 1995 Chevrolet Impala SS.

5.      The automatic stay was terminated on two separate ocassions by court order dated December 29, 2005, and April 27, 2006.

6.      Both orders termininating the automatic stay granted the Defendant authority to obtain possession and liquidate a 1995 Chevrolet Impala SS.

7.      The Defendant, instead of repossessing the 1995 Chevrolet Impala SS, sought and obtained a Default Judgment against the Plaintiff in the amount of $10,084.70 in the District Court of Coffee County, Alabama bearing case number DV 2006-88.

8.    In conjuncture with the District Court action, the Defendant issued a Process of Garnishment against the Plaintiff's prior employer, Pilgrim's Pride, Inc.

9.    Upon information and belief, the Defendant intends to garnish the Plaintiff's current employer.

10.   In filing the Alabama State District Court action, the Defendant advised the Honorable Paul Sherling, Alabama State District Judge, that it had obtained relief from the automatic stay, and that it (the Defendant) was authorized to proceed to obtain a state court judgment.

11.   The information provided to the Honorable Paul Sherling did not authorize the Defendant to obtain a monetary judgment.

12.   The Plaintiff initiated the above-styled adversary proceeding, seeking declaratory relief, that the Alabama State Court judgment was void ab initio.

13.   If the Defendant is allowed to continue, the Plaintiff will suffer irreparable harm by having her wages garnished.

WHEREFORE, the Plaintiff / Applicant moves this Honorable Court, after notice and hearing to enter a preliminary injunction pending resolution of the above-styled adversary proceeding and for all other relief that is just.

BROCK & STOUT

/s/ David G. Poston
David G. Poston, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email christal02@centurytel.net

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Pioneer Credit Company of Alabama, Inc. d/b/a First Southeast Acceptance Corporation, % CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104, and upon Thadius W. Morgan, Jr., Esq., Attorney for First Southeast Acceptance Corporation, twmjr_law@yahoo.com, via U.S. Mail, postage prepaid and fully addressed *or* by electronic mail this **14**[th] day of July, 2006.

/s/ David G. Poston
David G. Poston, Esq.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                    Case No. 05-12674-WRS
                                                         Chapter 13
FERNISA L. PARKER,

        Debtor

FERNISA L. PARKER,

        Plaintiff                              Adv. Pro. No. 06-1139-WRS

   v.

PIONEER CREDIT COMPANY
OF ALABAMA INC. d/b/a FIRST
SOUTHEAST ACCEPTANCE
CORPORATION,

        Defendant

<u>**PRELIMINARY INJUNCTION**</u>

This Adversary Proceeding came before the Court for hearing at 10:00 a.m. on July 19,

2006, upon the motion for preliminary injunction filed by Fernisa L. Parker, the Plaintiff in this

Adversary Proceeding and the Debtor in the underlying Chapter 13 case.  The Plaintiff was

present by counsel David G. Poston and Defendant Pioneer Credit was present by counsel

Thadius W. Morgan Jr..  This injunction is issued pursuant to Rule 7065, Fed. R. Bankr. P.

It is undisputed that Defendant Pioneer Credit has brought suit against the Debtor in the

District Court for Coffee County, Alabama, under Case No. DV2006-88.  Pioneer Credit seeks,

or has obtained a money judgment against the Debtor and is attempting to garnish the Debtor's

wages in violation of the automatic stay.  The Court notes that it entered an order on April 27,

2006, terminating the automatic stay to permit First South East Acceptance (now Pioneer Credit) to enforce its lien on its collateral, a 1995 Chevrolet Impala.  (Case No. 05-12674, Doc. 22).

The Debtor filed a petition in bankruptcy, pursuant to Chapter 13 of the Bankruptcy Code, on October 14, 2005.  As of that date, an automatic stay went into effect.  11 U.S.C. § 362(a).  The automatic stay was modified to permit Pioneer Credit to repossess the Impala but the automatic stay was not further modified, notwithstanding the fact that Pioneer Credit has specifically requested to proceed in State Court against the Debtor.  The April 27, 2006, Order did not grant all of the relief requested and Pioneer Credit did not move the Court to amend its order.

Pioneer Credit contends that it has been defrauded and that the Debtor has wilfully misled the Court.  Even if that is so, and the Court understands that the Debtor disputes Pioneer Credit's allegations, Pioneer Credit may not violate the automatic stay.  Pioneer Credit has any number of remedies available to it.  However, it may not violate the automatic stay simply because it claims that the Debtor has committed a fraud.  The Court finds that the garnishment of the Debtor's wages would cause irreparable harm.  The Court further finds that the Debtor has shown a probability of success on the merits.  In addition, the Court finds that legal remedies are inadequate.

ORDERED, that Defendant Pioneer Credit Company of Alabama, Inc., d/b/a Fist Southeast Acceptance is ENJOINED from taking any further action in prosecuting the civil action in Coffee County, Alabama.  Moreover, Defendant Pioneer Credit is ORDERED to take all necessary action to recall any wage garnishment process or proceedings directed against the

Plaintiff.  This Preliminary Injunction is effective as of 10:20 a.m., July 19, 2006, and shall

remain in effect until further order of this Court.

      Done this 19th day of July, 2006.

                        /s/ William R. Sawyer
                        United States Bankruptcy Judge


c: David G. Poston, Attorney for Plaintiff
   Thadius W. Morgan Jr., Attorney for Defendant

**FOR THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | * | **CHAPTER 13 BANKRUPTCY** |
| **FERNISA PARKER,** | * | **CASE NO.: 05-12674** |
| **DEBTOR,** | * | |
| **FERNISA PARKER,** | * | |
| **PLAINTIFF,** | * | |
| **VS.** | * | **ADVERSARY PROCEEDING** |
| **PIONEER CREDIT COMPANY OF** | * | **CASE NUMBER: 06-01139** |
| **ALABAMA, INC., d/b/a 1st SOUTH** | | |
| **EAST ACCEPTANCE CORPORATION,** | * | |
| **DEFENDANT.** | * | |

**MOTION TO DISMISS,**
**ANSWER AND COUNTERCLAIM**

COMES NOW the Creditor/Defendant, PIONEER CREDIT COMPANY OF ALABAMA, INC., D/B/A 1ST SOUTH EAST ACCEPTANCE CORPORATION, by and through its counsel of record, Thadius W. Morgan, Jr., and hereby moves this Honorable Court to dismiss this cause, and in support thereof sets down and assigns the following separate and several grounds:

1.     The Defendant's Motion For Relief From Stay specifically stated that the creditor, 1st South East Acceptance Corporation, "requests the entry of an order granting it relief from the automatic stay, allowing Creditor to file suit against Debtor in State Court to recover monies owed under the security agreement."

2.     The Defendant was granted relief from the automatic stay on April 27, 2006.  An Order Terminating Stay was entered by Judge William A. Sawyer stating "ORDERED that the stay in this case with respect to this creditor, to permit enforcement of a lien against the property of the estate or of the debtor described in the motion, is TERMINATED."

3.      The Complaint fails to state a claim against the Defendant upon which relief can be granted and is due to be dismissed pursuant to Rule 7012(b) of M.D. AL L.B.R..

WHEREFORE, the Creditor/Defendant prays that this Court order that the Plaintiff's Complaint be dismissed, that the Creditor be permitted to execute on the judgment obtained in the District Court of Coffee County, Alabama against Debtor, and, pursuant to 11 USC §523(d), that the Court grant judgment in favor of the creditor for a reasonable attorney's fee for the proceeding.

## ANSWER

COMES NOW the Defendant, 1st SOUTH EAST ACCEPTANCE, and, without waiving its Motion to Dismiss, but to the contrary insisting on same, answers the Complaint as follows:

## FIRST DEFENSE

Defendant denies the material allegations contained in paragraph 1and demands strict proof thereof.  Defendant admits the material allegations contained in paragraphs 2 through 22.  Defendant denies the material allegations contained in paragraphs 23 through 36 and demands strict proof thereof.

## SECOND DEFENSE

The Complaint fails to state a claim against the Defendant upon which relief can be granted.

## THIRD DEFENSE

The Complaint is due to be dismissed pursuant to Rule 41 Federal Rules of Civil Procedure.

## COUNTERCLAIM

The Creditor/Defendant, 1st SOUTH EAST ACCEPTANCE, having answered Complainant's Complaint, states the following as its counterclaim:

1.      The Plaintiff's action is meritless and frivolous as Creditor/Defendant is not in violation of the automatic stay, and in fact was granted relief from the stay.

2.      The Creditor is due to be permitted to proceed with execution of its judgment obtained in the District Court of Coffee County, Alabama against Plaintiff/Debtor.

3.      The Creditor should not be forced to bear the costs of defending against the

Plaintiff's frivolous action.

WHEREFORE, the Creditor/Defendant prays that this Court order that the Plaintiff's Complaint be dismissed, that the Creditor/Defendant be permitted to execute on its judgment obtained in the District Court of Coffee County, Alabama against the Debtor/Plaintiff, and, pursuant to 11 USC §523(d), that the Court grant judgment in favor of the creditor for a reasonable attorney's fee for the proceeding.

Respectfully submitted this the 15th day of August, 2006.

_____/s/ Thadius W. Morgan, Jr._____
THADIUS W. MORGAN, JR. (MOR072)
Attorney for Defendant

OF COUNSEL:
Thadius W. Morgan, Jr.
P.O. Box 310396
203 S. Edwards Street
Enterprise, AL 36331
(343) 347-8130

<u>**CERTIFICATE OF SERVICE**</u>

I, Thadius W. Morgan, Jr., hereby certify that a copy of the foregoing Motion, Answer and Counterclaim were served on all counsel of record for the parties either by electronic or standard first class mail on August 15, 2006.

_____/s/ Thadius W. Morgan, Jr._____
Of Counsel

## UNITED STATES BANKRUPTCY COURT

### Middle District of Alabama

In re:                                                    Case No.: 06–01139
**Parker v. Pioneer Credit Company of Alabama, Inc.**      BK Case No.: 05–12674
**d/b/a Fir**

### NOTICE

PLEASE TAKE NOTICE that a hearing will be held at

U.S. Bankruptcy Court, Federal Courthouse, 101 W. Troy Street, Dothan, AL 36303

on 9/6/06 at 10:00 AM

to consider and act upon the following:

*11* – Motion to Dismiss Adversary Proceeding Answer and Counterclaim Filed by Thadius W. Morgan Jr. on behalf of Pioneer Credit Company of Alabama, Inc. d/b/a First Southeast Acceptance Corporation. (Morgan, Thadius)

Dated:  8/16/06

Richard S. Oda
Clerk, U.S. Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                          Case No. 05-12674-DHW
                                               Chapter 13
FERNISA PARKER,

       Debtor

FERNISA PARKER,

       Plaintiff
                                               Adv. Pro. No. 06-1139-DHW
   v.

PIONEER CREDIT COMPANY
OF ALABAMA, INC., d/b/a FIRST
SOUTHEAST ACCEPTANCE
CORPORATION,

       Defendant

**ORDER DENYING MOTION**

      The defendant filed a motion on August 15, 2006 to dismiss this adversary proceeding.

      In accordance with the ruling of the court from the bench in open court on September 6, 2006, it is

      ORDERED that the motion is DENIED.

      Done this 13 day of September, 2006.


                 /s/ Dwight H. Williams, Jr.
                 United States Bankruptcy Judge

c: Cameron A. Metcalf,  Attorney for Plaintiff
   Thadius W. Morgan, Jr., Attorney for Defendant

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NUMBER |
| FERNISA PARKER, | ) | 05-12674 |
| | ) | (CHAPTER 13 CASE) |
| DEBTOR | ) | |

*************************************************************************

| | | |
|---|---|---|
| FERNISA PARKER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | AP# 06-1139 |
| | ) | |
| PIONEER CREDIT COMPANY OF ALABAMA, INC., | ) | |
| D/B/A FIRST SOUTHEAST ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

### PLAINTIFF'S ANSWER TO COUNTERCLAIM

Comes now the Plaintiff and answers the Defendant's counterclaim as follows:

1.    Denied.

2.    Denied.

3.    Denied.

### Affirmative Defense One

1.    The automatic stay prohibits the Defendant from proceeding with execution on its judgment.

### Affirmative Defense Two

2.    Res Judicata.  This matter was previously litigated and the Defendant was granted relief from the

automatic stay as it pertains to obtaining possession of the vehicle.

### Affirmative Defense Three

3.    Collateral Estoppel.  This matter was previously litigated and the Defendant was permitted to

proceed to repossess its collateral.

Respectfully submitted this **31**[st] day of October, 2006.

BROCK & STOUT

*/s/ David G. Poston*
David G. Poston, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned hereby certify that I have this date served a copy of the foregoing upon Thadius W. Morgan, Esq., Attorney for Defendant, via electronic mail this **31**[st] day of October, 2006.

*/s/ David G. Poston*
David G. Poston

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NUMBER |
| FERNISA PARKER, | ) | 05-12674 |
| | ) | (CHAPTER 13 CASE) |
| DEBTOR | ) | |

*************************************************************************

| | | |
|---|---|---|
| FERNISA PARKER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | AP# 06-1139 |
| | ) | |
| PIONEER CREDIT COMPANY OF ALABAMA, INC., | ) | |
| D/B/A FIRST SOUTHEAST ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Comes now the Plaintiff, by and through the undersigned attorney, pursuant to F.R.B.P. 7012(b)(6) and moves this Honorable Court to dismiss the Defendant's counterclaim.  As grounds for her motion, the Plaintiff states as follows:

1.    The Defendant previously sought and obtained relief from the automatic stay as it pertains to enforcing its lien on a 1995 Chevrolet Impala.

2.    This Honorable Court has ruled on two (2) separate occasions that the Defendant is only entitled to obtain possession of the collateral.

3.    The automatic stay as prescribed by 11 U.S.C. §362a prohibits the Defendant from enforcing any claim against the Debtor; to wit: execution of the Debtor's property or garnishing the Plaintiff's wages.

4.      This Honorable Court previously issued an injunction on July 19, 2006, which prohibited the

Defendant from enforcing a state court judgment against the Plaintiff.

Wherefore, the Plaintiff moves this Honorable Court to dismiss the counterclaim and for all relief

that is just.

Respectfully submitted this **31**[st]  day of October, 2006.


BROCK & STOUT


*/s/ David G. Poston*
David G. Poston, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Thadius
W. Morgan, Attorney for Defendant, via electronic mail this **31**[st] day of October, 2006.


*/s/ David G. Poston*
David G. Poston

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NUMBER |
| FERNISA PARKER, | ) | 05-12674 |
| | ) | (CHAPTER 13 CASE) |
| DEBTOR | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| FERNISA PARKER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | AP# 06-1139 |
| | ) | |
| PIONEER CREDIT COMPANY OF ALABAMA, INC., | ) | |
| D/B/A FIRST SOUTHEAST ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

### PLAINTIFF'S PRETRIAL DISCLOSURES

COMES NOW, the Plaintiff, Fernisa Parker, pursuant to Federal Rule Of Bankruptcy Procedure 7026(a)(3) and submits the following pretrial disclosures:

1) **Witnesses:**

   a)  Fernisa Parker, 106 Radio Street, Enterprise, Alabama 36330. Telephone number: (334) 347-3240.

   b)  Thomas G. Parker, 1032 Boll Weevil Circle, Enterprise, Alabama 36330. Telephone number: (334) 393-0511.

2) **Witnesses Whom The Plaintiff May Call:**

   a)  Johnnie Sanders, 106 Radio Street, Enterprise, Alabama 36330. Telephone number: (334) 347-3240

3) **Witnesses Whose Testimony Is Expected To Be Presented By Deposition:**

   None.

4) **Documents Or Other Exhibits:**

   a)  Retail Installment Contract as between Plaintiff and Defendant dated April 27, 2004.

b)  Fernisa Parker's Chapter 13 plan filed on October 14, 2005. The Chapter 13 plan will indicate the Plaintiff's intent to surrender the 1995 Chevrolet Impala to the Defendant.

c)  Joint consent motion lifting automatic stay filed on December 8, 2005, regarding termination of the automatic stay as it pertains to the 1995 Chevrolet Impala.

d)  Consent Order signed by the Honorable William R. Sawyer, United States Bankruptcy Judge, entered of record on December 29, 2005 granting in rem relief as it pertains to the 1995 Chevrolet Impala.

e)  Correspondence dated February 22, 2006, from David G. Poston, Esq. to Thadius W. Morgan, Jr., Esq. indicating location of the 1995 Chevrolet Impala.

f)  Motion For Relief From Automatic Stay filed by the Defendant on March 23, 2006.

g)  Amended Motion From Relief From Stay filed by the Defendant on April 3, 2006.

h)  Order granting in rem relief from automatic stay as it pertains to the 1995 Chevrolet Impala entered of record on April 27, 2006.

i)  Summons and Complaint filed in the District Court of Coffee County, Alabama on or about May 11, 2006. The Complaint is styled First Southeast Acceptance Corporation v. Fernisa Parker, et al.

j)  Process Of Garnishment filed in the District Court of Coffee County, Alabama, bearing case number DV 2006-88, and filed on or about July 5, 2006. The garnishment was served on Pilgrim's Pride, Inc. seeking to garnish the Plaintiff's wages.

k)  Application For Preliminary Injunction against the Defendant filed in the instant Adversary Proceeding.

l)  Preliminary Injunction effective at 10:20 a.m. on July 19, 2006, ordering discharge of the garnishment issued in the District Court of Coffee County, Alabama action bearing case number DV 2006-88.

m)  Plaintiff's Second Set Of Interrogatories dated December 19, 2006.

n)  Defendant's Answers To Plaintiff's Second Set Of Interrogatories dated February 6, 2007.

o)  Certificate Of Title regarding the 1995 Chevrolet Impala.

p)  Loan history from the Defendant regarding the 1995 Chevrolet Impala.

5)    **Other**:

The Plaintiff reserves the right to call any witnesses or introduce any documentary evidence for impeachment purposes.

Respectfully submitted this **2**$^{nd}$ day of May, 2007.

BROCK & STOUT

David G. Poston, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Thadius W. Morgan, Jr., Attorney for Defendant, via electronic mail at  twmjr_law@yahoo.com this **2**$^{nd}$ day of May, 2007.

David G. Poston

AV50109

ALABAMA JUDICIAL DATA CENTER
COFFEE        COUNTY

ORDER FOR SERVICE AND RETURN

BY 2006 000080 00
B PAUL SHERLING

IN THE DISTRICT COURT OF COFFEE        COUNTY

LET SOUTH EAST ACCEPTANCE CORP VS PERRITA PARKER, ET AL

SERVE ON:  0001

PILGRIMS PRIDE, CHD
4899 COUNTY ROAD 694
ENTERPRISE      AL  36330-0000

RECEIVED
JUL 3 1 2006
Reissue
CCSO

NOTES:
GARNISHMENT AND ANSWER FORM

RECEIVED
JUL - 7 2006
CCSO

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

07/07/2006  DATE                 CLERK: JAMES M COUNTS        BY:____
                                        P. O. BOX 311284
                                        ENTERPRISE AL  36331-1284
                                        (334)347-2519

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
        DOCUMENT IN ___Coffee___ COUNTY, ALABAMA
TO:

    Jo Ann                           SIGNATURE OF SERVER

NAME AT ADDRESS ABOVE                DATE  8-22-06

OPERATOR: DEK
PREPARED: 07/07/2006

UNABLE TO LOCATE  7/7/06
THIS DATE_____
☐ IMPROPER ADDRESS
☐ MOVED
☑ OTHER  No Longer Employed
              Here
COFFEE COUNTY SHERIFF'S DEPT.
BY_____
        DEPUTY SHERIFF

CERTIFIED TO BE A TRUE COPY
ATTEST  James M Counts
        REGISTER/CLERK
CIRCUIT COURT, COFFEE COUNTY, AL

CC: Morgan

AV50305

ALABAMA JUDICIAL DATA CENTER
COFFEE          COUNTY

ORDER FOR SERVICE AND RETURN

BY 2006 000088 00
B PAUL SHERLING

IN THE DISTRICT COURT OF COFFEE          COUNTY

1ST SOUTH EAST ACCEPTANCE CORP VS PERNISE PARKER, ET AL

SERVE ON:  G001


PILGRIMS PRIDE, INC
4595 COUNTY ROAD 636
ENTERPRISE     AL  36330-0000



NOTES:
    GARNISHMENT AND ANSWER FORM



TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
         YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
         TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

07/07/2006  DATE            CLERK:  JAMES M COUNTS          BY:_____
                                    P. O. BOX 311284
                                    ENTERPRISE AL  36331-1284
                                    (334)347-2519

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
DOCUMENT TO:                          COUNTY, ALABAMA
TO:

Jo Ann                               SIGNATURE OF SERVER

NAME / ADDRESS ABOVE                 DATE  9-22-06

OPERATOR: DCK
PREPARED: 07/07/2006

UNABLE TO LOCATE
THIS DATE  7/17/06
☐ IMPROPER ADDRESS
☐ MOVED
☑ OTHER  No Longer Employed
                   Here
COFFEE COUNTY SHERIFF'S DEPT.
BY
         DEPUTY SHERIFF

| State of Alabama Unified Judicial System Form C-23    Rev. 3/80 | **GARNISHEE RELEASE** | Case Number DV-2006-88 |

IN THE _____ **DISTRICT** _____ COURT OF _____ **COFFEE** _____ , ALABAMA
         (Circuit or District)                         (Name of County)

**1ST SOUTHEAST ACCEPTANCE**      v.      **FERNISA PARKER, ET AL.**
         Plaintiff                                       Defendant

**Garnishee:**    **PILGRIM'S PRIDE**
**Address:**    4693 COUNTY ROAD 636
                ENTERPRISE, ALABAMA 36331

[stamp: JUL 2006 FILED J.M. Counts Court Clerk Coffee Co. AL]

The plaintiff or his/her attorney requests that the garnishee in the above case be released from the process of garnishment for the following reasons:

THE UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF ALABAMA has issued a Preliminary Injunction ordering that the garnishment proceedings be stayed pending further orders of the Bankruptcy Court.

_7/28/06_
Date Requested

_____
Plaintiff/Attorney Signature

---

**NOTICE TO GARNISHEE**

I certify that the garnishee in the above case is released from the process of garnishment as of

_7-28-06_
Date

_8-2-06_
Date Issued

Clerk _James M Counts_    By: _____

CERTIFIED TO BE A TRUE COPY
ATTEST _James M Counts_
REGISTER-CLERK
CIRCUIT COURT, COFFEE COUNTY, AL

Cc: Morgan & Garnishee

**Court Record: Original**        **Garnishee: Copy**

ALABAMA JUDICIAL DATA CENTER
COFFEE COUNTY DISTRICT COURT
GARNISHEE ANSWER

DV 2006 000066.00
JUDGE: B PAUL SHERLING

IN THE DISTRICT COURT OF COFFEE COUNTY

JET SOUTH EAST ACCEPTANCE CORP VS PERNISA PARKER, ET AL

PARTY: PARKER PERNISA                    PARTY'S ATTY:

ENTERPRISE   AL 36330 0000

SSN: 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

GARNISHEE: PILGRIMS PRIDE, IND
PARTY ID: 070
ADDRESS: 4455 COUNTY ROAD 635
ENTERPRISE          AL 36330 0000



AFTER READING THE INSTRUCTION SHEET AND THE PROCESS OF GARNISHMENT  CHECK
THE APPROPRIATE ANSWER BELOW AND SIGN.  KEEP A COPY FOR YOUR FILES AND
MAIL ORIGINAL TO ADDRESS BELOW.

____  OBLIGOR IS EMPLOYED AND GARNISHEE WILL WITHHOLD FROM THE SALARY
      WAGES, OR COMPENSATION, AS REQUIRED, AND PAY INTO COURT.

____  OBLIGOR IS EMPLOYED, BUT HIS DISPOSABLE EARNINGS ARE NOT SUFFICIENT
      TO BE SUBJECT TO GARNISHMENT.

____  GARNISHEE HAS IN HIS POSSESSION OR CONTROL PROPERTY OR MONEY
      BELONGING TO THE OBLIGOR, WHICH IS NOT WAGES, SALARY OR
      COMPENSATION, NAMELY:

      AND IS HOLDING SAME SUBJECT TO ORDERS OF COURT.

X___  OBLIGOR IS NOT EMPLOYED - GARNISHEE NOT INDEBTED TO THE OBLIGOR WHEN
      PAPERS WAS RECEIVED, OR WHEN MAKING THIS ANSWER, OR DURING
      INTERVENING TIME, AND HAVE NOT IN MY POSSESSION OR CONTROL ANY
      EARNINGS OF THE OBLIGOR

X___  OTHER (EXPLAIN):
      P.O. BOX 311905          exit  01/03/2006
      Enterprise AL 36331



MELANIE J. ZIMMER
MY COMMISSION EXPIRES
July 31, 2007

_Cindy Poster_
GARNISHEE / AGENT / (SIGNATURE)

SWORN AND SUBSCRIBED BEFORE ME ON THIS

DATE: ____08/ 25/2006____

_Melanie J. Zimmer_
NOTARY / CLERK / REGISTER (SIGNATURE)

PLAINTIFF'S ATTORNEY:

MORGAN THADDUE W JR
P.O. BOX 395
301 S. EDWARDS
ENTERPRISE          AL 36330

PLEASE RETURN TO: JAMES M COUNTS
DISTRICT COURT OF COFFEE COUNTY
P.O. BOX 311247
ENTERPRISE    AL 36331-1247
(334) 347-2519

CERTIFIED TO BE A TRUE COPY
_James M Counts_
REGISTER/CLERK
CIRCUIT COURT COFFEE COUNTY, AL.

OPERATOR: DEA
PREPARED: 07/07/2006

AV6201

ALABAMA JUDICIAL DATA CENTER
COFFEE COUNTY DISTRICT COURT
GARNISHEE ANSWER

DV 2006 000PEB 00
JUDGE: B PAUL SHERLING

IN THE DISTRICT COURT OF COFFEE COUNTY

1ST SOUTH EAST ACCEPTANCE CORP VS FERNISA PARKER, ET AL

PARTY: PARKER FERNISA                    PARTY'S ATTY:
ADDRESS: 170 MARIO STREET
          ENTERPRISE   AL 36330 0000

   SSN: 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

GARNISHEE: PILGRIMS PRIDE, IND
   PARTY #: 0001
   ADDRESS: 4692 COUNTY ROAD 606
             ENTERPRISE         AL 36330 0000



AUG 2006
FILED
J.M. Counts
Court Clerk
Coffee Co. AL

AFTER READING THE INSTRUCTION SHEET AND THE PROCESS OF GARNISHMENT, CHECK
THE APPROPRIATE ANSWER BELOW AND SIGN. KEEP A COPY FOR YOUR FILES AND
MAIL ORIGINAL TO ADDRESS BELOW.

---- OBLIGOR IS EMPLOYED AND GARNISHEE WILL WITHHOLD FROM THE SALARY,
      WAGES, OR COMPENSATION, AS REQUIRED, AND PAY INTO COURT.

---- OBLIGOR IS EMPLOYED, BUT HIS DISPOSABLE EARNINGS ARE NOT SUFFICIENT
      TO BE SUBJECT TO GARNISHMENT.

---- GARNISHEE HAS IN HIS POSSESSION OR CONTROL PROPERTY OR MONEY
      BELONGING TO THE OBLIGOR, WHICH IS NOT WAGES, SALARY OR
      COMPENSATION, NAMELY:

      AND IS HOLDING SAME SUBJECT TO ORDERS OF COURT.

X_  OBLIGOR IS NOT EMPLOYED - GARNISHEE NOT INDEBTED TO THE OBLIGOR WHEN
      PROCESS WAS RECEIVED, OR WHEN MAKING THIS ANSWER, OR DURING
      INTERVENING TIME, AND HAVE NOT IN MY POSSESSION OR CONTROL ANY
      BELONGINGS OF THE OBLIGOR.

X_  OTHER (EXPLAIN): P.O. BOX 311905            extd  01/03/2006
                      Enter Prise  AL  36331



MELANIE J. ZIMMER
MY COMMISSION EXPIRES
July 31, 2007

_Cindy Poston_
GARNISHEE / AGENT / (SIGNATURE)

SWORN AND SUBSCRIBED BEFORE ME ON THIS
DATE: ___ 08/25/2006

_Melanie J. Zimmer_
NOTARY / CLERK / REGISTER (SIGNATURE)

PLAINTIFF'S ATTORNEY:

MORGAN THADIUS W JR
P.O. BOX 996
205 S. EDWARDS
ENTERPRISE        AL 36330

cc Morgan

PLEASE RETURN TO: JAMES M COUNTS
                   DISTRICT COURT OF COFFEE COUNTY
                   P.O. BOX 311284
                   ENTERPRISE  AL  36331-1284
                   (334) 347-2519

OPERATOR: GEN
PREPARED: 07/07/2006

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

FERNISA L. PARKER,

     Debtor.

_____

FERNISA L. PARKER,

     Plaintiff,

v.

PIONEER CREDIT COMPANY
OF ALABAMA, INC. d/b/a
FIRST SOUTHEAST ACCEPTANCE
CORPORATION,

     Defendant.

Case No. 05-12674
Chapter 13

Adv. Proc. No. 06-01139

## MEMORANDUM OPINION

In this adversary proceeding, the plaintiff alleges that the defendant has willfully violated the automatic stay of 11 U.S.C. § 362 and seeks actual damages, punitive damages, attorney fees and costs, and declaratory relief voiding a state court judgment. The matter came on for trial on May 9, 2007. There, the plaintiff was represented by her counsel, Michael D. Brock and David G. Poston, and the defendant was represented by its counsel, Thadius W. Morgan, Jr.

### Jurisdiction

In this action, the court's jurisdiction derives from 28 U.S.C. § 1334 and from the United States District Court for this district's order referring title 11 matters to the Bankruptcy Court. Further, this action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) thereby extending the court's jurisdiction to the entry of a final order or judgment.

Facts

On October 14, 2005, Fernisia L. Parker filed a chapter 13 petition for relief in this court. In the schedules accompanying that petition, Parker listed the defendant, First Southeast Acceptance Corporation (hereinafter "First Southeast"), as a creditor whose debt was secured by a 1995 Chevrolet Impala.

Parker's chapter 13 plan provided for the surrender of that vehicle to First Southeast. On December 8, 2005, Parker and First Southeast filed a consent motion (Doc. #10) seeking relief from stay to permit First Southeast "to repossess and liquidate or otherwise proceed against the following property securing the debt of the Debtor(s) to Creditor: **1995 Chevrolet Impala VIN#1G1BL52P9SR140367**." *See* Doc. #10 (emphasis in original). In response to the parties agreement, this court on December 29, 2005, entered a consent order (Doc. #11) terminating the stay "to allow 1st South East Acceptance Corporation to enforce its lien on the 1995 Chevrolet Impala described in the motion."

Parker's chapter 13 plan was confirmed on January 23, 2006. The confirmed plan provided for Parker's surrender of the vehicle to First Southeast.

Despite the court's December 29, 2005 order terminating the stay, on March 23, 2006, First Southeast filed a motion seeking relief from stay. Therein, it alleged that Parker had refused to surrender the 1995 Chevrolet, and thereby had committed a fraud upon the court. In the concluding paragraph, the pray for relief, First Southeast requests that the stay be terminated to allow it to file suit in state court against the debtor.

On April 27, 2006, the court entered an order (Doc. #22) providing, *inter alia*, that the stay with respect to the "creditor, to permit enforcement of a lien against the property of the estate or of the debtor described in the motion, is TERMINATED."[1]

---

[1] Pursuant to this court's local rule 4001-1, the April 27, 2006 order entered without an actual hearing when the debtor did not file an objection to the motion within the requisite time.

On May 11, 2006, First Southeast filed a complaint against Parker and her two cosigners in the District Court of Coffee County, Alabama (No. DV2006-88) seeking a money judgment. Law enforcement officers attempted to serve the state court complaint on Parker but were unsuccessful in doing so on at least two occasions. Parker, upon learning that the police were looking for her, became distraught fearing that she was about to be arrested. Both Parker and her mother testified that Parker's fear manifested itself in sleeplessness, loss of appetite, nervousness, and withdrawal from her two minor children. That emotional distress continued for over three weeks.

On June 19, 2006, default judgment in the Coffee County suit entered in favor of First Southeast, and pursuant to that judgment, First Southeast served Parker's employer with Process of Garnishment in an attempt to garnish Parker's wages. No monies were withheld, however, as a result of the garnishment.

Parker filed this adversary proceeding on July 14, 2006, and immediately moved to enjoin First Southeast's garnishment of her wages (Doc. #2). Following a hearing on the application for preliminary injunction, Bankruptcy Judge William R. Sawyer entered an order (Doc. #7) enjoining First Southeast from further prosecuting the Coffee County, Alabama civil action and ordering it to recall any wage garnishment process or proceeding directed against Parker. The court wrote:

> The automatic stay was modified to permit Pioneer Credit [First Southeast] to repossess the Impala but the automatic stay was not further modified, notwithstanding the fact that Pioneer Credit has specifically requested to proceed in State Court against the Debtor. The April 27, 2006, Order did not grant all of the relief requested and Pioneer Credit did not move the Court to amend its order.

> Pioneer Credit contends that it has been defrauded and that the Debtor has wilfully misled the Court. Even if that is so, and the court understands that the Debtor disputes Pioneer Credit's allegations, Pioneer Credit may not violate the automatic stay. Pioneer Credit has any number of remedies available to it.

3

However, it may not violate the automatic stay simply because it claims that the Debtor has committed a fraud.

Preliminary Injunction,  Doc. #7, July 19, 2006 (Sawyer, J.).

Law

Those who willfully violate the stay are liable for the debtor's actual damages, including costs and attorney fees.   Further, willful violators, in some circumstances, may be assessed punitive damages.   11 U.S.C. § 362(k)(1) provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Court of Appeals for this Circuit, while acknowledging that the term "willfulness" varies depending upon the context, has held that "willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986); *see Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996).   Other Circuit Courts have found a "willful" violation of the automatic stay when the violator knew of the stay and intentionally committed the violative act, regardless of any specific intent to violate the stay.  *See Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994) *cited with approval in Jove Engineering,* 92 F.3d at 1555; *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds,* 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995).

At the conclusion of the trial in this case, the court announced its finding that First Southeast by suing the debtor in State court, had willfully violated the automatic stay.  The resulting default judgment was void.  *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void and without effect."). Although the stay had been terminated to permit First Southeast to enforce its *in rem* rights in its collateral, the debtor's car, the stay had not been terminated to permit First Southeast to pursue the debtor *in personam*.  First

4

Southeast acted intentionally in filing suit against Parker, and that act was in violation of the automatic stay.  A specific intent to violate the stay is not required.  Therefore, the stay violation here was a willful one.[2]

Having found that First Southeast willfully violated the stay, the court turns to the issue of damages.  Parker claims actual damages as a result of emotional injury and as a result of her attorneys' fees.

Parker testified that she was placed in fear by the police officer's attempts to serve her with the First Southeast suit believing that the police purpose was to effect her arrest.   The court is mindful that a debtor who suffers from only fleeting emotional injury cannot recover for purely emotional injuries under § 362(k).  *See Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880-81 (7th Cir. 2001).  Yet in this case, Parker's emotional injuries in the form of sleeplessness, loss of appetite, nervousness, and withdrawal persisted for over three weeks.  The court finds that Parkers actual damage for emotional injury is $500.

On June 4, 2007, Parker's counsel filed an application for compensation (Doc. #38) wherein they seek $12,791.45 for representing Parker in this matter ($12,398.40 fees and $393.05 expense).  The application is supported by a chronological   itemization of services rendered, time spent, and the hourly rate applied to those services.   The court, after a review of the application, finds the fee reasonable and awards Parker actual damages for attorneys' fee totaling $12,791.45.

---

[2] First Southeast argues that Judge Sawyer's order of April 27, 2006 granted stay relief beyond allowing the mere enforcement of its security interest in the collateral.  That argument, however, is untenable.

11 U.S.C. § 1306 delineates the property that comprises a chapter 13 debtor's estate.  That property includes a debtor's postpetition earnings.  *See* 11 U.S.C. § 1306(a)(2).  Hence, First Southeast's suit for money judgment and garnishment of the debtor's wages were not just acts against the debtor but against the debtor's bankruptcy estate in the form of her postpetition wages.  Clearly, the April 27, 2006 order did not terminate the stay to this extent.

Further, First Southeast sued not only the debtor but two guarantors of the indebtedness.  Those guarantors are also protected under the codebtor stay of 11 U.S.C. § 1301, and First Southeast failed to obtain relief from the codebtor stay.

Finally, Parker seeks punitive damages which, pursuant to the statute, are allowed only in "appropriate circumstances." 11 U.S.C. § 362(k). The Bankruptcy Code, however, does not specify what constitutes appropriate circumstances for the imposition of punitive damages, leaving it to the sound discretion of the bankruptcy court. *Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46, 56 (Bankr. M.D. Ala. 2003)(Sawyer, J.). A number of standards have been employed by the courts that have considered the issue.

Some courts look to the "maliciousness or bad faith" of the creditor as a guide. Others use the creditor's "arrogant defiance of federal law" as the standard. Others, yet, have used "egregious, vindictive, or intentional misconduct" of the creditor as the standard. Still others have employed a multi-factor approach consisting of 1) the nature of the creditor's conduct; 2) the creditor's ability to pay; 3) the creditor's motives; and 4) provocation by the debtor. *Green Tree Servicing, LLC. v. Taylor*, 2007 WL 1009768, *6 (S.D. W. Va. March 30, 2007) (noting the above standards used by courts to determine whether circumstances are appropriate for a punitive damage award).

Under any of these standards, however, it is clear that "punitive damages usually require more than mere willful violation of the automatic stay." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).

While it is clear that First Southeast willfully committed an act that was in violation of the stay, the court is not convinced that it did so maliciously. Rather, it appears to the court that First Southeast acted with the mistaken belief that the stay, both *in rem* and *in personam*, had been terminated. It follows that punitive damages are not appropriate in this case.

Conclusion

For the foregoing reasons, judgment in this adversary proceeding will enter for the plaintiff and against the defendant. Pursuant to Fed. R. Bankr. Proc. 9021, an order of judgment, consonant with this memorandum opinion, will enter separately.

Done this the 28th day of June, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c:  Michael D. Brock, Plaintiff's Attorney
    David G. Poston, Plaintiff's Attorney
    Thadius W. Morgan, Jr., Defendant's Attorney

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 05-12674
                                                   Chapter 13

FERNISA L. PARKER,

      Debtor.

_____

FERNISA L. PARKER,

      Plaintiff,

v.                                                 Adv. Proc. No. 06-01139

PIONEER CREDIT COMPANY
OF ALABAMA, INC. d/b/a
FIRST SOUTHEAST ACCEPTANCE
CORPORATION,

      Defendant.

## FINAL JUDGMENT

In accordance with the Memorandum Opinion entered this day, it is hereby

ORDERED that the plaintiff Fernisa L. Parker have and recover of the defendant Pioneer Credit Company of Alabama, Inc. d/b/a First Southeast Acceptance Corporation actual damages in the amount of $500 and attorneys' fees and expenses in the amount of $12,791.45.  It is

FURTHER ORDERED that the default judgment obtained by the defendant in the District Court of Coffee County, Alabama (No. DV2006-88) is hereby declared VOID as obtained in violation of the automatic stay.

Done this 28th day of June, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge


c:  Michael D. Brock, Plaintiff's Attorney
    David G. Poston, Plaintiff's Attorney
    Thadius W. Morgan, Jr., Defendant's Attorney

**FOR THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | * | **CHAPTER 13 BANKRUPTCY** |
| **FERNISA PARKER,** | * | **CASE NO.: 05-12674** |
| **DEBTOR,** | * | |
| **FERNISA PARKER,** | * | |
| **PLAINTIFF,** | * | |
| **VS.** | * | **ADVERSARY PROCEEDING** |
| **PIONEER CREDIT COMPANY OF** | * | **CASE NUMBER: 06-01139** |
| **ALABAMA, INC., d/b/a 1st SOUTH** | | |
| **EAST ACCEPTANCE CORPORATION,** | * | |
| **DEFENDANT.** | * | |

**MOTION TO ALTER, AMEND OR VACATE JUDGMENT**
**OR IN THE ALTERNATIVE, FOR A NEW TRIAL**

**COMES NOW** the Defendant, **PIONEER CREDIT COMPANY OF ALABAMA, INC., D/B/A 1ST SOUTH EAST ACCEPTANCE CORPORATION,** by and through its attorney of record, Thadius W. Morgan, Jr., and moves this Honorable Court, pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, to alter, amend or vacate the Order entered by the Court in the above-styled cause on the 28th day of June, 2007, or, in the alternative, the Defendant moves this Court to set aside the Order, and that this Court grant a new trial, and as grounds for said Motion would show unto this Honorable Court as follows:

1.      The award of $500.00 actual damages to the Debtor was arbitrary and thus reversible error.  The Debtor made no showing of any actual damages, and thus there was no basis in the body of evidence for the said award of $500.00.

2.      The award of $12,791.45 as attorney fees in this case was not reasonable and constitutes reversible error.  The fee declaration submitted to the Court by the Debtor's attorney herein included billing for clerical work, office overhead and expenses which should not be

properly included in any award of attorney fees herein.  Further, the billable hours indicated on the fee declaration submitted were outside the realm of reason considering the nature of the proceeding and trial preparation that should have actually been necessary for this case.  Lastly, the hourly billing rate requested by the Debtor's attorney and incorporated into the Court's Final Order exceeded the rate ordinarily approved by this Court for work done by the most competent and experienced bankruptcy attorneys practicing before the Court.

3.    The Order of June 28, 2007 is contrary to the evidence.

4.    The Order of June 28, 2007 is not supported by the evidence.

5.    The Order of June 28, 2007 is not supported by the evidence in sufficient measure required by law.

6.    The Order of June 28, 2007 is contrary to the great weight of the evidence.

7.    The Order of June 28, 2007 is contrary to the law and evidence.

8.    That said Order is contrary to the undisputed evidence, is a result of mistake, and must be set aside; and a motion for a new trial granted.

**WHEREFORE**, the Defendant prays that this Honorable Court will grant its Motion to Alter, Amend or Vacate Judgment or in the Alternative, For a New Trial.

Done this the 6th day of July, 2007.

_/s/Thadius W. Morgan, Jr._____
THADIUS W. MORGAN, JR. (MOR072)

OF COUNSEL:
Thadius W. Morgan, Jr.
Post Office Box 3101396
Enterprise, Alabama 36331
(334) 347-8130

## CERTIFICATE OF SERVICE

I, Thadius W. Morgan, Jr., hereby certify that I have this date served a copy of the above and foregoing pleading upon the following counsel of record either by electronic or standard first class mail on July 6, 2007.

_/s/Thadius W. Morgan, Jr._____
Of Counsel

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                                  Case No. 05-12674
                                                        Chapter 13

FERNISA L. PARKER,

      Debtor.

_____

FERNISA L. PARKER,

      Plaintiff,

v.                                                      Adv. Proc. No. 06-01139

PIONEER CREDIT COMPANY OF
ALABAMA, INC. d/b/a FIRST
SOUTHEAST ACCEPTANCE
CORPORATION,

      Defendant.

## *EX PARTE* ORDER DENYING DEFENDANT'S
## MOTION TO ALTER, AMEND OR VACATE JUDGMENT AND FOR NEW TRIAL

On July 6, 2007, the defendant in this adversary proceeding filed a motion to alter, amend or vacate the judgment of this court and for new trial.[1]  Upon consideration of the defendant's motion, it is

ORDERED that the motion is DENIED.

Done this the 9th day of July, 2007.

          /s/ Dwight H. Williams, Jr.
          United States Bankruptcy Judge

c:  Michael D. Brock, Plaintiff's Attorney

---

[1]The judgment sought to be altered, amended or vacated is at Doc. #41.  A memorandum opinion, wherein findings of fact and conclusions of law are made supporting the judgment, is at Doc. #40.

David G. Poston, Plaintiff's Attorney
Thadius W. Morgan, Jr., Defendant's Attorney

**FOR THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | * | **CHAPTER 13 BANKRUPTCY** |
| **FERNISA PARKER,** | * | **CASE NO.: 05-12674** |
| **DEBTOR,** | * | |
| **FERNISA PARKER,** | * | |
| **PLAINTIFF,** | * | |
| **VS.** | * | **ADVERSARY PROCEEDING** |
| **PIONEER CREDIT COMPANY OF ALABAMA, INC., d/b/a 1st SOUTH EAST ACCEPTANCE CORPORATION,** | * | **CASE NUMBER: 06-01139** |
| **DEFENDANT.** | * | |

## NOTICE OF APPEAL

Notice is hereby given that Pioneer Credit Company of Alabama, Inc. d/b/a 1st South East Acceptance Corporation, Defendant in the above named case, herby appeals to the United States Court of Appeals for the Eleventh Circuit from the final judgment entered on June 28, 2007 and Order denying the Defendant's Motion to Alter, Amend or Vacate Judgment and for New Trial entered on July 9, 2007.

## CERTIFICATE OF SERVICE

I, Thadius W. Morgan, Jr., hereby certify that I have this date served a copy of the above

and foregoing Notice of Appeal on all parties listed below by placing a copy of same in the

United States Mail, postage prepaid and addressed to their regular mailing addresses.

Honorable David G. Poston
Honorable Michael D. Brock
Honorable Gary W. Stout
Attorneys for Plaintiff
Post Office Drawer 311167
Enterprise, Alabama 36331

This the 18th day of July, 2007.

_/s/ Thadius W. Morgan, Jr._____
Of Counsel

```
             IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE MIDDLE DISTRICT OF ALABAMA
                       NORTHERN DIVISION
```

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | |
| FERNISA L. PARKER, | ) | Case No. 05-12674 |
| | ) | |
|     Debtor. | ) | |
| | | |
| FERNISA L. PARKER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-1139 |
| | ) | |
| PIONEER CREDIT COMPANY OF | ) | |
| ALABAMA,INC. D/B/A FIRST | ) | |
| SOUTHEAST ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
|     Defendant. | ) | |
| | | Dothan, AL |
| | | May 9, 2007, 1:19 p.m. |

```
                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DWIGHT H. WILLIAMS
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    Michael Brock
                                Attorney at Law
                                P.O. Drawer 311167
                                Enterprise, AL 36331-1167

                                Thadius W. Morgan, Jr.
                                Attorney at Law
                                P.O. Box 310396
                                Enterprise, AL 36331

                                Sabrina L. McKinney
                                Attorney at Law
                                P.O. Box 173
                                Montgomery, AL 36101
Electronic Recorder
Operator:                       Desma Hamilton
Transcriber:                    Patricia Basham
                                6411 Quail Ridge Drive
                                Bartlett, TN  38135
                                9O1-372-O613
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

INDEX

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Thomas G. Parker | 11 | 33 | 40 | 43 |
| Fernisa L. Parker | 44 | 53 | -- | -- |
| Johnnie Sanders | 59 | 62 | -- | -- |

3

1          (CALL TO ORDER)

2          THE COURT:  All right.  If you will be seated.  This

3     afternoon we have one matter remaining, and that is the case of

4     Fernisa L. Parker versus Pioneer Credit Company of Alabama,

5     adversary proceeding number 06-1139.  Mr. Brock on behalf of

6     the plaintiff and Mr. Morgan on behalf of the defendant.

7          All right.  Are we ready to go to trial of this

8     matter?

9          MR. BROCK: Yes, Your Honor.

10          MR. MORGAN: Judge, I think there is one thing we can

11     take up before any testimony is actually taken to hopefully

12     expedite things.  Mike and I talked this morning and we both

13     agreed that it would make sense for us to make the necessary

14     stipulations for the admission of all of the documents that

15     were reflected on the parties' pretrial disclosures, rather

16     than taking a lot of tedious testimony to lay a predicate for

17     the admission of each individual document.  So if the court has

18     no objection –

19          THE COURT: All right.  Tell me what documents, if you

20     will, and how they have been marked and tender them to the

21     clerk.

22          MR. BROCK: This is just a copy for you, Judge.  My

23     Plaintiff's Exhibit No. 1 is a contract between the parties.

24          THE COURT:  All right.

25          MR. BROCK:  Plaintiff's Exhibit No. 2 will be the plan

4

1    and the notice of bankruptcy.

2         Plaintiff's Exhibit No. 3 will be the letter from Mr.

3    Morgan on behalf of his client wrote to Mr. Poston as the

4    debtor's attorney asking to sign a consent agreement on the

5    lifting of the stay.

6         Plaintiff's Exhibit No. 4 will be the order where the

7    court terminated the stay.

8         Plaintiff's Exhibit No. 5 will be the proof of claim

9    filed by the creditor.

10        Plaintiff's Exhibit No. 6 will be a letter from Mr.

11   Morgan as attorney for First Southeast Acceptance to Mr. Poston

12   as the debtor's attorney.

13        Plaintiff's Exhibit No. 7 will be a letter that Mr.

14   Poston responded to, to Morgan's letter.

15        Plaintiff's Exhibit No. 8 will be the second motion

16   for relief from stay that was filed in this case.

17        Plaintiff's Exhibit No. 9 will be the second order

18   terminating the stay in this case.

19        Plaintiff's Exhibit No. 10 will be the state court

20   action wherein the defendants sued the debtor.

21        THE COURT: In the state court?

22        MR. BROCK: Yes, sir.  That's No. 10.

23        Plaintiff's Exhibit No. 11 is the process of

24   garnishment that was initiated.

25        Plaintiff's Exhibit No. 13 is something that the court

5

1    has already entered an order, but I wanted to be able to ask

2    questions about it.  It is a preliminary injunction by Judge

3    Sawyer.

4            THE COURT: Yes.

5            MR. BROCK: Plaintiff's Exhibit 15, and I have skipped

6    some numbers, is a history, some sort of a – on the account

7    that was provided to us during discovery from the defendant on

8    Ms. Parker's account.

9            Plaintiff's Exhibit No. 16 is the plaintiff's second

10   set of interrogatories and the answers to the interrogatories.

11           Plaintiff's Exhibit No. 17 is a case action summary of

12   the state court action involving the lawsuit before the state

13   court judge.

14           THE COURT: All right.  So the parties have agreed that

15   these exhibits offered by the plaintiff may be admitted without

16   objection.

17           MR. MORGAN: We would not object to the admission of

18   any of those documents.

19           THE COURT:   All right.  And what else is there

20   preliminarily, counsel, if anything?

21           MR. MORGAN:  Judge, for the defendant as Defendant's

22   Exhibit 1, we would have an order for service and return on

23   summons served on Pilgrims Pride, Inc.

24           As Defendant's Exhibit No. 2 –

25           THE COURT:  Let me – I don't understand.  Defendant's

6

1    1 is a summons.  Is that a state court –

2            MR. MORGAN: Correct, Your Honor.

3            THE COURT:   So, in other words, is this following

4    relief, the order granting relief from the *in rem* stay, suit

5    was filed in state court?

6            MR. MORGAN: That's correct, Your Honor.

7            THE COURT:   So that's – all right.  And that's the

8    summons for that?

9            MR. MORGAN: And order for service and return.

10           THE COURT:   I think I have that or something similar

11   to it or maybe I just have the complaint.

12           MR. MORGAN: Actually it's on the garnishment, Judge.

13   Order for service and return on the process of garnishment.

14           THE COURT: Okay.

15           MR. MORGAN:  Defendant's Exhibit No. 2, we have the

16   garnishee's answer to the action filed in state court or the

17   process of garnishment, I should say.  And  Defendant's Exhibit

18   No. 3, the garnishee release.

19           THE COURT:   Where the garnishment was released?

20           MR. MORGAN: Correct, Your Honor.

21           THE COURT:   Okay.  No objections to the admission of

22   those?

23           MR. BROCK: No objection.

24           THE COURT:   Any other preliminary matters?

25           MR. BROCK: I don't believe so, Judge.

7

1          THE COURT: Let me ask you this, counsel: It seems

2     clear to me under the facts that have been alleged in the

3     complaint, and I don't have necessarily an answer that

4     specifically admits this, Mr. Morgan, but I think in

5     preliminary matters you do not dispute that there was an act to

6     collect the debt post relief of the *in rem* stay.

7          MR. MORGAN: We can't dispute that.

8          THE COURT: All right. So it seems to me that, whether

9     or not you intended to violate the stay or not, you intended,

10    the defendant did, to take an act that violated the automatic

11    stay. Do you concede that point?

12         MR. MORGAN: If the court finds that the act was a

13    violation of the stay –

14         THE COURT: Well, let me ask you, will you argue that

15    it wasn't? In other words, I read both orders granting relief

16    from stay to allow – it is an *in rem* relief from stay. It

17    allowed the defendant to pursue its *in rem* remedies, to enforce

18    its lien against the collateral.

19         MR. MORGAN: Your Honor, in all honesty that is not how

20    we interpret the order –

21         THE COURT: Well, maybe you interpreted it wrongly but

22    are you arguing that Judge Sawyer did more than that?

23         MR. MORGAN: Judge, we would certainly be of that

24    position. If the court finds otherwise, I understand –

25         THE COURT: In fairness to you, I want to hear what

8

1    your argument is.  I don't read that in the order and I know,

2    when I enter orders in that regard, I don't grant relief from

3    stay *in toto*.  It is not a matter of *in personam* relief I am

4    granting; I am granting relief to allow you to proceed against

5    the collateral.  And I read those as being specifically what

6    these do.  If you want to argue to the contrary, if you want to

7    make a showing that it is broader than that, then I will hear

8    your argument.  So I'm going to let you do that.

9        I thought maybe that we could short-circuit this

10   because, irrespective of your motive, if a creditor intends to

11   do an act, whether they intended to violate the automatic stay

12   or not, here intended to sue is enough for a willful violation

13   of the automatic stay whether they intended to violate the stay

14   or not.  Do you follow what I am saying?

15       MR. MORGAN: Yes, sir.

16       THE COURT: But nevertheless, if you contend that his

17   order went short of that, then I will let you make your defense

18   in that regard.

19       MR. MORGAN: Our position on it, as best I can

20   verbalize it, Judge, would be that the order issued by Judge

21   Sawyer with respect to this issue was ambiguous or confusing.

22       THE COURT: Let me see those exhibits, if I may.

23       MR. BROCK: The order has been stipulated to.

24       THE COURT: I can look at it right now.  There is a

25   consent order terminating stay dated December 29, '05.

9

1            MR. BROCK: This would be Plaintiff's Exhibit No. 9,

2    Judge.

3            THE COURT: And Plaintiff's 4 is the first order.

4            MR. MORGAN: Judge, the order that we are referencing

5    dates April of –

6            MR. BROCK: April 27.

7            THE COURT:  And that's No. 9.

8            MR. BROCK: Yes, sir.

9            THE COURT:  It is ordered that the stay in this case

10   with respect to this creditor to permit enforcement of a lien

11   against property of the estate or of the debtor.  Property of

12   the  estate  or  of  the  debtor  described  in  the  motion  is

13   terminated.

14           MR. MORGAN: And, Judge, in the motion that the court

15   references in that order we specifically asked for relief from

16   the stay to bring an action in state court.

17           THE COURT:  Well, I'm not convinced by that argument.

18           MR. BROCK: Judge, if I may, Plaintiff's Exhibit No.

19   13, Judge Sawyer has already entered an order just to that,

20   that it did not allow that, and there is a court order saying

21   that –

22           THE COURT:  All right.  Well, I will hear whatever

23   evidence you want to put on.  It seems to me as though this act

24   was a willful act to collect a debt which is in violation of

25   the automatic stay.  So there is, by definition, a willful

T. Parker - Direct                    10

1    violation of the automatic stay.

2          Then it seems to me to turn on the issue of damages.

3    Punitive damages are available for willful violations of the

4    stay but, if it is done so unknowingly or in ignorance – for

5    example, these lawyers were involved in a case I decided this

6    week where the defendant who was a default defendant claimed or

7    at least stated on a tape-recorded message that they had been

8    in contact with the D.A. and the D.A. said they could arrest on

9    this particular check.  That would have gone – if they had been

10   here to have shown that, that may have gone to the issue of

11   punitive damages because they were not doing so in disregard of

12   the bankruptcy code or just total flaunting of the court.  If

13   this  is  an  error,  it  seems  to  me  to  go  to  the  –  or

14   misunderstanding, or misunderstanding of the bankruptcy law,

15   then it goes, to me, more to the area of punitive damages.

16         But, counsel, I want to let you run your case here.

17   If you want to make that argument, then I will let you make the

18   showing.

19         MR. MORGAN: Thank you, Judge.

20         THE  COURT:    All  right.    The  burden  is  on  the

21   plaintiff, so, Mr. Brock, if you will call your witness.

22         MR. MORGAN: Judge, I guess I can position myself –

23         THE COURT:  You need to be there and, if the trustee

24   needs to move for the adversary proceeding, they can.

25         MR.  BROCK:  Judge,  I  would  call  Mr.  Parker  to  the

T. Parker - Direct                          11

1    stand.

2              (THOMAS G. PARKER, WITNESS, SWORN)

3              THE COURT:  Sir, you have probably gathered already

4    the acoustics in this room are horrible.  Would you please

5    speak loudly where I can hear you?

6              THE WITNESS: Yes, sir.

7              THE COURT:  Thank you.  Mr. Brock.

8                         DIRECT EXAMINATION

9    BY MR. BROCK:

10   Q.        Sir, would you please state your name for the record?

11   A.        Thomas G. Parker.

12   Q.        Where are you currently employed, Mr. Parker?

13   A.        For First Southeast, Enterprise, Alabama.

14   Q.        Okay.  Is that the defendant in this lawsuit?

15   A.        Yes, sir.

16   Q.        What is your position with that company?

17   A.        I am the supervisor, management, manager.

18   Q.        Okay.  Is there anybody in your office that is above

19   you?

20   A.        No, sir.

21   Q.        Okay.  So you are the head honcho?

22   A.        I guess you could put it that way.

23   Q.        Okay.  Mr. Parker, can you describe for me what does

24   First Southeast Acceptance do; what is the nature of their

25   business?

T. Parker - Direct                    12

1    A.        We are an automobile finance company.  We finance

2    automobiles and contracts we buy from dealers.

3    Q.        Okay.  So you are an automobile finance company.  How

4    many years have you been in the automobile finance business?

5    A.        In excess of forty.

6    Q.        In excess of forty years in the automobile finance

7    company.  Now is it true that you used to own First Southeast

8    Acceptance; is that correct?

9    A.        I was president of the First Southeast Enterprise – I

10   mean First Enterprise of Southeast.

11   Q.        I'm sorry.  I couldn't –

12   A.        I did own that one also, the one I am at now.  Yes, I

13   did.  I sold it in 2000.

14   Q.        Okay.  And you sold it in 2000 and you stayed there as

15   the supervisor; is that correct and you continue to act as

16   supervisor?

17   A.        Yes, right.

18   Q.        In your forty-three – did you say forty-three years or

19   forty-two years?

20   A.        Forty-two, forty-three.

21   Q.        In your forty-three years experience in the automobile

22   finance business, have you ever had occasion for anyone to file

23   bankruptcy?

24   A.        Certainly.

25   Q.        Okay.  Currently at your current position with First

T. Parker - Direct                           13

1    Southeast Acceptance, how many gross receivables does First

2    Southeast Acceptance have in bankruptcy currently?

3              MR. MORGAN: Judge, I'm going to object.

4    A.        I don't really know.

5              MR. MORGAN: I am not indignant about the question.  I

6    don't see how it goes to any issue or is relevant.

7              THE COURT: Overruled.  I think as to the issue of

8    punitive damages, it has been held specifically that the

9    sophistication of one party versus the other has an impact on

10   the amount of punitive damages.

11             Overruled.  If you know the answer, sir.

12             THE WITNESS: I don't know the answer.

13   BY MR. BROCK:

14   Q.        Okay.  Would it help if I reminded you that during the

15   deposition that we took in my office on the 17th of November,

16   2006, that you testified during the deposition that you had

17   over half a million dollars in gross receivables that were

18   currently in bankruptcy?

19   A.        That's a guess.  That would be a guess.

20   Q.        Okay.  Would that be a fair guess on your part?

21   A.        I presume it would be.

22   Q.        Okay.  As the supervisor at First Southeast

23   Acceptance, do you know the number of people that you currently

24   have in bankruptcy, the number of customers?

25   A.        Do I do what?

T. Parker - Direct                                    14

1    Q.      The number of customers that First Southeast

2    Acceptance currently has?

3    A.      I don't know.

4    Q.      You don't know, okay.  Now do you know whether or not

5    the plaintiff, Ms. Parker, is a customer of First Southeast

6    Acceptance or was a customer of First Southeast Acceptance?

7    A.      I know the customer's name as a customer.

8    Q.      And what did she have financed through First Southeast

9    Acceptance?

10   A.      I believe it was a '95 Chevrolet Impala, I believe.

11   Q.      And First Southeast Acceptance subsequently learned

12   that Ms. Parker filed bankruptcy; is that correct?

13   A.      Yes, sir.

14   Q.      Okay.

15           MR. BROCK: Judge, may I approach the witness?

16           THE COURT: You may.

17   Q.      I will show you what has been previously marked as

18   Plaintiff's Exhibit No. 2.  Would you look through those pages

19   and tell me if you recognize that?

20   A.      Yes, I recognize this as a proof of claim, yes, the

21   notice.

22   Q.      Is that a notice of bankruptcy?

23   A.      Yes, sir.

24   Q.      Is there a plan attached to the notice of bankruptcy,

25   the debtor's plan?

T. Parker - Direct                          15

1    A.        I presume it is.

2    Q.        Okay.  And do you recall getting a notice of the

3    bankruptcy?

4    A.        I don't particularly recall getting it.

5    Q.        But you knew she had filed bankruptcy; correct?

6    A.        Yes, I know this customer, this name has filed

7    bankruptcy, yes.

8    Q.        And did you realize that when she filed – I assume

9    that you, or somebody from your office, looked over the plan,

10   that she was surrendering the automobile back to First

11   Southeast Acceptance?

12   A.        I believe that is correct.

13   Q.        If you need to look at it, this has been entered into

14   evidence.

15   A.        I am trying – where is the surrender part at.  Okay.

16   I don't think it was surrendered to begin with, was it?  Okay.

17   Q.        And was the vehicle surrendered?  That was the plan

18   proposed, to surrender it, is that correct?

19   A.        That is the plan, yes, sir.

20   Q.        Okay.  Now after you received the plan, what did you

21   do in order to effectuate possession of the vehicle?

22   A.        As far as taking possession of the vehicle, we went

23   through our attorney which supposedly contacted your office on

24   numerous phone calls to find out when we would take possession.

25   That is what normally happens.

T. Parker - Direct                          16

1  Q.       Let me show you what has been previously marked as

2  Plaintiff's Exhibit No. 3.  Have you ever seen that letter?

3  A.       Yes, sir, I have.

4  Q.       And what is that letter requesting?  Is that letter

5  requesting that Mr. Poston, who was actually the debtor's

6  attorney, sign a consent order lifting the stay, the automatic

7  stay?

8  A.       Yes, that is what I would agree it was.

9  Q.       Okay.  In fact, Mr. Poston signed that order and the

10  stay was subsequently lifted by this court on December 29; is

11  that correct?

12  A.       Well, I don't know.  I can't remember that.

13  Q.       I am handing you what has been previously marked as

14  Plaintiff's Exhibit No. 4.

15  A.       Okay.

16  Q.       In that order, did the court give you permission to do

17  anything other than to gain possession of the vehicle?

18  A.       No.

19  Q.       Now have you seen in your forty-two years experience

20  in the automobile financing business, have you reviewed court

21  orders on termination of automatic stay?

22  A.       Well, I have seen them, yes.

23  Q.       Okay.  Who is in charge of that at your office,

24  reviewing court orders?

25  A.       It is not in my office.  It is normally referred to

T. Parker - Direct                                  17

1    the attorneys.

2    Q.       Okay.  So you don't receive a copy of them?

3    A.       I guess we have.  Normally it is the attorney.

4    Q.       Okay.  So the attorney tells you – does the attorney

5    interpret each order for you; is that what you are testifying?

6    A.       I get his opinion, certainly.  That is what I pay him

7    for.

8    Q.       But you received this order and you have reviewed

9    numerous bankruptcy court orders in your forty-two years

10   experience; is that correct?

11   A.       You're talking about the notices, right, or are you

12   talking about the lift of stay?

13   Q.       I'm talking about the termination of the automatic

14   stay.

15   A.       Yes, sir, I have seen several, yes.

16   Q.       Okay.  Thank you.  Now after the stay was terminated,

17   what did you do to get the vehicle back from the plaintiff?

18   A.       What we tried to do was to get information through the

19   bankruptcy attorney as to where the location of the vehicle was

20   and if and when they were going to turn it in.

21   Q.       Did you call the –

22   A.       No, I – just a minute.  And we had contacted Mr.

23   Poston's office or Toni had, Bill's secretary.

24   Q.       Okay.  That is Mr. Morgan, your lawyer?

25   A.       Right.  And I think – I don't know how long that went

T. Parker - Direct                        18

1    on.  I think it was from around February until, what, close to

2    November of '06 that we finally got a letter from him telling

3    us the car was in Brundage, Alabama, on a county road.

4    Q.       I'm sorry.  Did you say that you requested in February

5    and you didn't receive –

6    A.       I think it was surrendered in February; wasn't it?

7    Q.       My question to you was – let me just do it this way.

8    Plaintiff's Exhibit No. 6, is that the letter that you directed

9    your attorney to send to the debtor's attorney?

10   A.       This is in February of '06?

11   Q.       Yes, sir.

12   A.       I didn't direct but I am sure Bill – I mean, that is

13   what Mr. Morgan did.

14   Q.       And you hired him to do that; is that correct?

15   A.       He works with our attorney, yes, sir.

16   Q.       Okay.  This letter, Plaintiff's Exhibit No. 6, is

17   seeking the location of the vehicle and it says in the letter

18   from your counsel that the debtor indicated that the vehicle

19   was located at her stepfather's home.  Do you know when she

20   indicated that?  Was it at the meeting of creditors?  Did you

21   attend a meeting of creditors?

22   A.       No, I didn't.

23   Q.       Okay.  And I guess your attorney wrote that he hopes

24   that my client hasn't perpetrated a fraud on the court by

25   disposing of the vehicle.  Now in response to your lawyer's

                    T. Parker - Direct                    19

1    letter, Plaintiff's No. 6, the debtor's attorney responded to

2    that letter; is that correct?

3    A.        Yes, that is correct.

4    Q.        And can you read that letter for us?

5    A.        He was telling us that the collateral was located on

6    78 County Road 4436 in Brundage, Alabama.

7    Q.        Okay.  Does it say anything else?

8    A.        It says your client may contact Charlie Thomas at so-

9    and-so and so-and-so, 735-3287, to arrange for directions.

10   Q.        And did you receive a copy of that letter?

11   A.        Yes, I got a copy of it.

12   Q.        Okay.  And did you –

13   A.        But that information, none of it was any good.

14   Q.        Well, did you make the telephone call, did you call

15   the number that was listed on that?

16   A.        Yes, we called it, and also –

17   Q.        No, I am asking you did you or somebody from First

18   Southeast Acceptance?

19   A.        Yeah, the recovery man called.

20   Q.        Is the recovery man employed at First Southeast

21   Acceptance?

22   A.        He was hired to locate the vehicle.

23   Q.        This is my question, and I apologize if I am not

24   making myself clear.  Did you, or any of your employees, call

25   that phone number?

T. Parker - Direct                    20

1    A.        No, not to my knowledge.

2    Q.        Okay.  You didn't call it?

3    A.        Uh-uh.

4    Q.        So you have no knowledge of whether or not it was a

5    good phone number or not?

6    A.        I only know what he said and he also tried to locate

7    that address.

8    Q.        So you are saying that you hired Mr. Casson, and I

9    apologize, I know the judge doesn't know this but who is Mr.

10   Casson?

11   A.        Mr. Casson has a recovery company.

12   Q.        When did you hire Mr. Casson?

13   A.        He has worked for us for about the last four years.

14   Q.        When did you hire him on the plaintiff's case?

15   A.        Well, I suppose I assigned it out to him to locate it

16   along about the early part of February.

17   Q.        Okay.  When you assign it to Mr. Casson, do you pay

18   him money?

19   A.        For his work, certainly.

20   Q.        Okay.  Is that money then charged to the plaintiff's

21   account, Ms. Parker in this case?

22   A.        Yes, it is.

23   Q.        Okay.  So sometime in February you contacted Mr.

24   Casson to go and try to find the vehicle; is that correct?

25   A.        At that address.

T. Parker - Direct                              21

1    Q.        Right.  And then when you contacted him and asked him

2    to go and find the vehicle, you have to pay him at that time?

3    A.        I pay him to make the trip and try to locate it, yes,

4    sir.

5    Q.        Okay.  I'm going to hand you now what has been marked

6    as Plaintiff's Exhibit No. 15.  Can you tell me what that is?

7    A.        That is a printout of the account.

8    Q.        What does that mean, it is a printout of the account?

9    A.        Well, it is a customer's record where payments have

10   been applied and expenses been applied.  That is what it is.

11   Q.        Does that have a memo section to it?

12   A.        They normally do have, right here.

13   Q.        So it does have a memo.  What is the purpose of the

14   memo section?

15   A.        Well, for information on the account.

16   Q.        So if you hired Mr. Casson in February to go out and

17   find Ms. Parker's vehicle, would that information show up on

18   the memo section?

19   A.        Probably.  If we wrote a check for expenses, we

20   normally notate it in the memo section.

21   Q.        Okay.  Can you tell me in the memo section if there is

22   any information in February, March, April, May, June, July,

23   August, September or October of you paying anyone to go out and

24   pick up that vehicle?

25   A.        Right here on November 20.

T. Parker - Direct                    22

1    Q.      All right.  November 20, that was after we took the

2    deposition.

3    A.      That's right.

4    Q.      I'm talking about the stay was lifted in February.

5    Mr. Poston's office, the debtor's attorney, sent you an address

6    and a telephone number in February?

7    A.      Uh-huh.

8    Q.      You testified that you hired Mr. Casson to recover the

9    vehicle and you testified that Mr. Casson made the telephone

10   call to a number that was listed on Mr. Poston's letter but

11   that you did not.  You also testified that there would be – you

12   would have to pay Mr. Casson to do this.  And I am asking you

13   is there anything –

14   A.      The reason there is not an entry there for February is

15   because he didn't find the car and he hadn't finished the job,

16   and so we didn't pay him anything.

17   Q.      So you don't have to pay him –

18   A.      If he is working on the case, we don't pay him until

19   he finishes it normally.

20   Q.      You wouldn't make an annotation in there that he

21   called, couldn't find it, there would be no annotation

22   whatsoever?

23   A.      No.  He is self-employed.

24   Q.      I'm asking if you would, First Southeast Acceptance,

25   hired Mr. Casson to go down and find the vehicle; he couldn't

T. Parker - Direct                                    23

1    find it; would there be an annotation of that or you just don't

2    keep those type records?

3    A.      There could be a note somewhere but it was nothing

4    constructive at that point, so, you know, we didn't know where

5    to start looking next.

6    Q.      Okay.  Well, as it came up earlier, your deposition

7    was taken on November 17, 2006, in my office?

8    A.      Uh-huh.

9    Q.      Was there any information given to you of the

10   whereabouts of the vehicle at the time?

11   A.      No.  I will tell you exactly how it happened if you

12   want me to.  He went up in February –

13          THE COURT:   No, sir.  Your lawyer will have an

14   opportunity on cross-examination to let you rehabilitate

15   whatever you feel like you have not been able to say.

16          THE WITNESS: Okay.

17   Q.      So was there any additional information given to you

18   of the whereabouts of the vehicle from February up until your

19   deposition was taken on November 17?

20   A.      No.

21   Q.      Okay.  When did you get the car?

22   A.      It was somewhere around the last part of November or

23   the first of December.

24   Q.      Okay.  I'm going to hand you what has been previously

25   marked as Plaintiff's Exhibit No. 16.  This is the answer to

T. Parker - Direct                    24

1    your second set of interrogatories, and I would represent that

2    in there it says that you received – you got the vehicle on

3    November 27, 2006; is that correct?

4    A.      Uh-huh.

5    Q.      That is answer number three?

6    A.      Yeah.

7    Q.      Okay.  That was roughly ten days after we took your

8    deposition; is that correct?

9    A.      Uh-huh.

10   Q.      And back to Plaintiff's Exhibit No. 15, starting on –

11   can you read to me what it says on November 20, 2006, entry,

12   the first one?

13   A.      We wrote down, it says a partial charge-off in the

14   amount of forty-nine eighty-seven thirty-nine against the

15   account.  That is a write-off of bad debt.

16   Q.      The November 20, sir, that one right there, 11-20-

17   2006.

18   A.       Charge back, eighty-two sixty against the inventory,

19   four nine for collection of services by Caden.

20           THE COURT:  I am sorry.  I'm not following this with

21   the exhibit.  I am looking at November 20, '06, and I see an

22   entry at 3:26 p.m.

23           MR. BROCK: I am sorry.  The one under that –

24           THE COURT: You are calling my attention to –

25           MR. BROCK: Yes, sir.  11-20 at 3:26 p.m., CB to

```
                      T. Parker - Direct                    25
```

1    account eighty-two sixty.  Do you see that?

2           THE COURT:   Charge back.  CB meaning charge back to

3    account?

4           MR. BROCK: Yes, sir.

5           THE COURT:  Eighty-two dollars and sixty cents against

6    inventory.  I see it now.

7    BY MR. BROCK:

8    Q.      Who is the Caden Company?

9    A.      He is just an individual.

10   Q.      Is that the same individual you were talking about

11   that you hired back in February?

12   A.      Yes, sir.

13   Q.      Is this the same individual that you just testified

14   that you don't pay until he completes the job?

15   A.      Normally we don't pay him.  We had not paid him for

16   that.

17   Q.      What is the eighty-two dollars and sixty cents for?

18   A.      For obviously the work that he did on the account

19   before.

20   Q.      Back in February?

21   A.      Uh-huh.  Yes, sir.

22   Q.      Is there anything –

23   A.      We didn't do anything on the account after we made the

24   first trip up there in February.  We didn't work the account no

25   more until we could find – we had nowhere to go.

T. Parker - Direct                              26

1    Q.        Okay.  So you are testifying that that was for – that

2    wasn't for –

3    A.        That was money that we owed him, right.

4    Q.        Okay.  And then on November 28 – although he hadn't

5    completed the job yet, is that correct?

6    A.        No, we hadn't found the car.

7    Q.        And the November 28 entry, what does that say?

8    A.        That's when we got the car, November 28, I think.

9    Q.        Well, you got the car on the 27th, so you paid him

10   again on the 28th; is that correct?

11   A.        That's correct.

12   Q.        I guess the question is how was it that you were able

13   to find the car, let's see, March, April, June, July, August,

14   September, October, seven or eight months after –

15   A.        After we made the trip in February –

16   Q.        Just let me finish.  How were you able to find the car

17   eight months after the stay had lifted and you received no

18   additional information, how was it that you were finally able

19   to find the car?

20   A.        Okay.  Well, we made the trip up there in early

21   February.  The address you gave us, of course, there was no

22   such thing as that county road.  And he checked with the

23   sheriff's department, the police department, and the lady he

24   talked to there said there was no such address as that.  Well,

25   he rode back down that way around Brundage and wasn't able to

T. Parker - Direct                                27

1    find anything.  So he spent about a half a day up there on it.

2    Then I said, well, we will find out through the attorney and

3    see if they can give us a better location of it.

4          So we didn't do anything on it until after the end of

5    November and he was working another account in the general area

6    up there and he stopped back at the police station and he asked

7    them about this particular address and they said, no, there is

8    not a county road but there is a private drive and he told him

9    where that was at.  So he went down into that private drive

10   which is a road that goes back into the woods and there are

11   some mobile homes out there and the car was sitting over there

12   in the bushes next to those mobile homes.  So then we called a

13   wrecker to come and get it.

14   Q.       Was that at her stepfather's house?

15   A.       I don't know whose house it was.

16   Q.       Okay.  Did the vehicle run at that time?

17   A.       No, uh-uh.  The motor –

18   Q.       But he did a little investigation and he found out

19   that instead of it saying county road, it was a private road,

20   and everything else was correct but he was just able to find it

21   because he just decided to ask somebody?

22   A.       Well, all he did was get on that private drive and go

23   down the road to the end of it, back in the woods where there

24   were about four or five trailers.

25   Q.       But he decided to ask somebody for help, I guess?

                          T. Parker - Direct                    28

1    A.       Well, he asked a different person.

2    Q.       Around March 29 and going back to March 29, you filed

3    a second motion for relief from stay; is that correct?

4    A.       If that's the date on it.

5    Q.       Okay.  And then there was an order entered on April

6    27, 2006, on that motion for relief from stay and that is

7    Plaintiff's Exhibit No. 9.  Did you get a copy of that order?

8    A.       I don't remember if I did then or not.  I presume I

9    did.

10   Q.       You presume you did?

11   A.       Yes.

12   Q.       Do you normally get copies of court orders?

13   A.       Yeah.

14   Q.       Is there anything in that order that states that you

15   can sue the plaintiff while she is in a Chapter 13?

16            MR. MORGAN: Objection, Judge.  That calls for a legal

17   analysis and conclusion from a lay witness.

18            THE COURT: I will sustain.

19   Q.       What made you think that you could file suit against

20   the plaintiff while she was in a Chapter 13 for money damages?

21            MR. MORGAN: Judge, I'm going to object to that.  That

22   is a rephrasing of the same question.

23            THE COURT:   Overruled.

24   A.       Well, the answer, I guess, would be that, when the

25   stay was lifted, it was lifted also for money – for equity,

T. Parker - Direct                              29

1    too.

2    Q.       Well, how do you know that; what are you basing that

3    on?

4    A.       I can't answer that.

5    Q.       So did you testify during your deposition that you

6    didn't know whether or not you had legal grounds to –

7    A.       I still don't.

8    Q.       You still don't, but you did it anyway?

9            MR. MORGAN: I object to the form.

10   A.       On the advice of counsel.

11   Q.       On the advice of counsel, okay.  I am showing you what

12   has been previously admitted as Plaintiff's Exhibit No. 10,

13   which I will represent to you is already in evidence as a copy

14   of the state court lawsuit that First Southeast Acceptance

15   filed against the plaintiff.

16           Now in this lawsuit you didn't even request to get

17   permission from the state court for possession of the vehicle.

18   That's not anything that you requested.  You weren't wanting

19   the vehicle; you just wanted money?

20   A.       I don't agree to that.

21   Q.       Is there anything in this lawsuit – feel free to look

22   through it – that says demanding possession of the vehicle?

23           MR. MORGAN: Judge, we will stipulate that's not the

24   case.

25           THE COURT:   All right.  So the answer is no?

T. Parker - Direct                      30

1      MR. MORGAN: That's correct.

2    Q.      During your forty-three years experience in the

3    automobile finance business, many of which was as a

4    supervisor/owner, have you ever sued a customer who was in an

5    active chapter thirteen bankruptcy for money damages?

6    A.      Not without knowing, knowledge.

7           MR. MORGAN: Judge, I am going to object and move to

8    strike.

9           THE COURT:   Overruled.

10   Q.      I guess you can go ahead and answer it because I

11   didn't hear it.

12   A.      Not to my knowledge.

13   Q.      Not to your knowledge.  And in your deposition you

14   testified that you never have; is that correct?

15   A.      Well, not to my knowledge as far as I know.

16   Q.      Well, wouldn't that be something that you would know

17   if you had sued?

18   A.      Yes.

19   Q.      Now you also sued not only the debtor, the plaintiff

20   in this case, you sued the co-signers, the debtor's mother and

21   the debtor's ex-husband; is that correct?  You sued three

22   people in this lawsuit in the state court; is that correct?

23   A.      I don't think so.

24   Q.      I am sorry.  I can't hear.

25   A.      I don't think so.

T. Parker - Direct                                    31

1    Q.        Okay.  We will refer back to Plaintiff's Exhibit No.

2    10 and it shows that the defendants are Fernisa L. Parker,

3    Christian Parker and Johnnie Sanders.  Were these the three

4    people that were on the note?

5    A.        Yes.

6    Q.        And subsequently First Southeast Acceptance obtained

7    a  judgment  against  the  defendants;  is  that  correct,  the

8    plaintiffs in this case?

9    A.        That is correct.

10   Q.        And then you initiated garnishment of Ms. Parker's

11   wages and the wages of Ms. Johnnie Sanders, the co-signer; is

12   that correct?

13   A.        No, sir, I don't think anybody was garnished but Ms.

14   Fernisa Parker.

15   Q.        Okay.  And ultimately the garnishment failed because

16   she was no longer employed at the same place; is that correct?

17   Is that why you didn't get any money?

18   A.        That is what I understand.

19            MR.  BROCK:  Judge,  if  I  could  have  just  about  one

20   minute to look at my notes.

21            THE COURT: You may.

22            (Pause)

23   Q.        In  the  evidence  there  is  one  letter  where  your

24   attorney sent Mr. Poston requesting location of the vehicle.

25   Were there any other letters that you know about that I don't

1    have where either you, or your attorney, requested the location

2    of the vehicle?

3    A.      No, sir.

4    Q.      So it was just that one; is that correct?

5    A.      Yes, sir.

6    Q.      So after, as you testified in February, that you hired

7    Mr. Casson to find the vehicle and he couldn't or the first

8    time he couldn't and the second time he could, but the first

9    time he couldn't, you did nothing to find the location of the

10   vehicle after that, after you hired Mr. Casson; is that

11   correct?

12   A.      That's correct.  We figured it was a loss to begin

13   with, so we would go ahead and just take the loss and let it

14   go.

15   Q.      So one letter and it is a loss?

16   A.      We didn't know where to start looking.

17   Q.      Well, did you contact the debtor's attorney again?

18   A.      No, we sure didn't.

19   Q.      Now when you testified during your deposition about

20   Mr. Casson calling the phone number provided to you by Mr.

21   Poston's office, that phone number wasn't disconnected, someone

22   answered the phone; isn't that correct?

23   A.      It seems like that he said that there was some kind of

24   noise on the other end of the line pertaining to some type of

25   – anyway, profanity words, but that was the end of that.

T. Parker - Cross                           33

1    Q.      But it was a working number, correct?

2    A.      Whoever was on the other end, yeah, it was working.

3    Q.      Right.  Now did Mr. Casson ever call that number back

4    or is he a one-time shot guy, too?

5    A.      Not to my knowledge.

6    Q.      Okay.

7            MR. BROCK: I have nothing further, Judge.

8            THE COURT:   Mr. Morgan.

9            MR. MORGAN: Thank you, Your Honor.

10                        CROSS EXAMINATION

11   BY MR. MORGAN:

12   Q.      Mr. Parker, after the debtor indicated her intent to

13   surrender the vehicle, in your mind –

14           THE COURT:   Mr. Morgan, you will need to come to the

15   podium so that the recorder can pick your voice up.

16           MR. MORGAN: Pardon me, Judge.

17   Q.      Again, Mr. Parker, after the debtor indicated her

18   intent to surrender her vehicle, in your mind did your company

19   make a diligent effort to locate the vehicle?

20   A.      Yes, we made an effort – well, first of all, the

21   normal procedure that we end up doing is in most cases the

22   attorney would notify you, or my attorney, where the car is;

23   make arrangements for it to be picked up.  In this particular

24   case, nothing happened and, as I went back and told you earlier

25   that Toni had made some calls over to Mr. Poston's office but

T. Parker - Cross                           34

1    I don't think she ever got any results out of it, and then we

2    got the letter.  We made an effort to go up to the road in

3    Brundage –

4           MR. BROCK: Judge, I don't mean to interrupt.  I just

5    can't hear.  Would you mind if I sit up there?

6           THE COURT:   Not at all.

7           MR. BROCK: Thank you.

8           THE WITNESS: We were of the opinion that after we went

9    up to Brundage to try to find the car, then we couldn't, after

10   he went through about a half a day trying to run around and

11   trying to find somebody who knew something about it, and then

12   I told him just to forget it for the time being.  So we didn't

13   do anything on it for some time because we took the position it

14   was probably – the motor was messed up and it was junk or

15   something, so we didn't do anything for several months on it

16   and then we started – I started just writing it off of the

17   books and go ahead and face the loss in it.

18          MR. MORGAN: Judge, if the court doesn't object, I'm

19   going to approach the witness also.  I am having difficulty –

20          THE COURT:   All right.  But you will have to speak

21   loudly because we tape record this or digitally record it, so

22   you will need to come on up here close to the microphone so it

23   will pick you up, as well, Mr. Morgan, and that is fine.

24          MR. MORGAN: Mr. Parker is kind of soft-spoken and I am

25   having a hard time hearing.

T. Parker - Cross                    35

1    THE COURT:  As long as our recorder is able to hear

2    it, we are recording.

3    BY MR. MORGAN:

4    Q.      Mr. Parker, are you aware of anything else that could

5    lawfully have been done in an attempt to locate this vehicle

6    prior to its actually being located?

7    A.      Well, in my deposition I stated that the customer's

8    last known address was on Dixie Drive in Enterprise and the

9    attorney lives in Dothan, the car is up in the woods in

10   Brundage.  You know, where are we supposed to start?  If the

11   attorney can't tell us where it is at, I sure can't find it.

12   Q.      Again, do you know of anything else that could have

13   lawfully been done in an attempt by yourself, your company, to

14   find this vehicle prior to its actually being found?

15   A.      I don't know anything else I could have.

16   Q.      And, once again, when was the car actually located?

17   A.      The last week of November on another trip that he had

18   to the area and he went by the police station again and this

19   individual told him that there was a private drive down in that

20   direction, so that is how he found it.

21   Q.      Was the actual locale or address at which the car was

22   found communicated to you or your company by the debtor, the

23   debtor's attorney or by some other party?

24   A.      The only address I had was the letter that Mr. Poston

25   sent me.

T. Parker - Cross                               36

1    Q.      Was that a correct address for the location of the

2    car?

3    A.      No, it wasn't.  There is no county road 4436 per the

4    post office and per the police department.

5    Q.      Was it solely through the efforts of you or your

6    company or agents acting on your behalf that the car was

7    located rather than from specific information from the debtor?

8    A.      We just stumbled into it is what we did whenever we

9    found out that there was a private drive.

10   Q.      The motion for relief from stay that was filed on

11   behalf of First Southeast by office, you just referred to it a

12   moment ago.  You are familiar with it, generally speaking,

13   correct?

14   A.      Correct.

15   Q.      The relief asked for in that motion was relief from

16   the stay to bring an action in the state court, correct?

17   A.      Yes, sir.

18   Q.      Are you, in fact, familiar with the order issued by

19   Judge Sawyer on April 27 of this past year?

20   A.      Yes, sir.

21   Q.      Okay.  You referred to that order and you are familiar

22   with it?

23   A.      Yes, sir.

24   Q.      With the content wording of that order.  That order

25   granted relief from the stay to permit enforcement of a lien

T. Parker - Cross                     37

1    against the property or estate of the debtor described in the

2    motion.  Are you familiar with that language that is contained

3    in the order?

4    A.        Yes, but I don't know what it means.

5    Q.        Okay.  But subsequent to that order being issued, the

6    action was brought in state court, correct?

7    A.        Yes, sir.

8    Q.        The action was filed in state court subsequent to the

9    issuance of Judge Sawyer's order of April 27, correct, and that

10   was in fact an action asking for money damages, correct?

11   A.        Yes, sir.

12   Q.        You don't dispute that, right?

13   A.        No.

14   Q.        In bringing that action in state district court, was

15   it your intent to circumvent or defy this court in any way?

16   A.        No.

17   Q.        Do you think that by bringing that action in circuit

18   court – pardon me – in state district court, you were defying

19   any order of this court, flaunting the law, the bankruptcy law

20   that might be applicable to these matters?

21   A.        I thought what we did was in line with what the law

22   is.

23   Q.        With what the judge's ruling was?

24   A.        Yeah.

25   Q.        Was that your understanding?

T. Parker - Cross                                38

1    A.      Yeah.

2    Q.      As best you understood the matter?

3    A.      That's right.

4    Q.      Okay.  A judgment was obtained against the debtor in

5    the case, correct, the case in state court?

6    A.      Yes, sir.

7    Q.      Has the judgment ever been collected on?

8    A.      No, sir.

9    Q.      After the judgment was obtained, a process of

10   garnishment was filed, correct?

11   A.      That's correct.

12           MR. MORGAN: Judge, as I understand it, the three

13   exhibits that the defendant indicated as being our exhibits

14   one, two and three, are already entered, correct?

15           THE COURT:    That's my understanding.  They were

16   admitted without objection, yes.

17   Q.      After you obtained the judgment against the debtor in

18   state court and filed the process of garnishment, did the

19   employer, or who we understood the defendant's employer to be,

20   respond to the garnishment?

21   A.      I think as not employed.

22   Q.      I'm going to show you the garnishee's answer that has

23   already been entered into evidence in this case.  Does it

24   indicate that the defendant is not employed there?

25   A.      Yes, sir.

T. Parker - Cross                          39

1    Q.       And did the order for service and return on the

2    process of garnishment also so indicate?

3    A.       Yes.

4    Q.       And was a garnishee release filed after a preliminary

5    injunction ordering the garnishment proceedings be stayed?

6    A.       Yes, sir, that is my understanding.

7    Q.       Was that garnishee release filed in state court?

8    A.       Yes, sir.

9    Q.       Has First Southeast taken any action aside from that

10   process of garnishment to attempt to collect on the judgment

11   that was obtained in state court?

12   A.       No, sir.

13   Q.       Any action of any description?

14   A.       No, sir.

15   Q.       Has any payment ever been received from the debtor

16   toward satisfaction of the judgment entered by the state court?

17   A.       No.

18            MR. MORGAN: Judge, I will pass the witness.

19            THE COURT:   Pardon me, sir?

20            MR. MORGAN: I will pass the witness.

21            THE COURT:   Mr. Brock.

22            MR. BROCK: A couple of questions, Judge.

23            THE COURT:   Sure.

24                        REDIRECT EXAMINATION

25   BY MR. BROCK:

T. Parker - Redirect                    40

1    Q.        You testified on questions of your counsel that you

2    took the position that the motor was blown up in the vehicle or

3    junk, so you gave up looking?

4    A.        That's correct.

5    Q.        Okay.  Isn't that really why you turned around and

6    sued for money damages because you didn't want the car back?

7    A.        Of course not.  That's absurd.

8    Q.        Well, you testified –

9    A.        We would have preferred to have the car and get it

10   over with because, as far as we were concerned, it was over

11   with anyway.  That is why I started writing the account off.

12   Q.        But you never called back the debtor's attorney to

13   find out if he had a different address?

14   A.        No, because I would go through my attorney to do that.

15   I don't – there is no need for me to call him.

16   Q.        And you never directed your attorney to call a second

17   time?

18   A.        I directed to Toni to call, and I think she did a

19   couple of times.  She said she did.

20   Q.        Any other letters or any documents that you have?

21   A.        Not to my knowledge.

22   Q.        Okay.  You stated that you didn't get any information

23   from Mr. Poston, the debtor's lawyer, to help you find the

24   vehicle?

25   A.        Just the letters.

T. Parker - Redirect                    41

1    Q.       Just the letters.  Now this letter says the 1995

2    Chevrolet Impala, and I am referring to Plaintiff's Exhibit No.

3    7, is located at 78 Country Road  –

4    A.       County Road.

5    Q.       Well, I will let you look at it if you disagree with

6    what I am saying.

7    A.       That's the definition, County Road 4436.

8    Q.       Is that county or country?

9    A.       Well, it says country.

10   Q.       Okay.  I am just reading it.  I am not proud of Mr.

11   Poston's office or anything.  I'm just reading a letter.  It

12   says 78 Country Road, 4436, Brundage, Alabama.  Now the only

13   thing wrong with that address, instead of country, it should

14   have been private, but everything else is correct?

15   A.       It would be harder to find it where it says country,

16   too.

17   Q.       Can you answer the question?  I would appreciate it.

18   It is 78 Country Road, 4436, and it should have said private

19   road, not country, is that correct; but everything else is

20   correct?

21   A.       It could have probably been found with private road,

22   yes.

23   Q.       The only thing wrong with that address is it doesn't

24   say private; it says country.  Is that correct, yes or no?

25   A.       Yes.

T. Parker - Recross                    42

1    Q.        Okay.  And it also gives you the owner's name at that

2    location, who is at that house, Charlie Thomas, and it gives

3    you a phone number; is that correct?

4    A.        Yes, but the number is no good.

5    Q.        All right.  Let's go back into that.  You testified

6    Mr. Casson called one time, somebody received it and, according

7    to your deposition, some female answered and said something

8    that I won't repeat either.

9    A.        Okay.

10   Q.        But no one ever called back; is that correct?

11   A.        Certainly.

12   Q.        So do you know whether or not Charlie Thomas lives at

13   that number?

14   A.        No, I don't.

15   Q.        Okay.  So you don't know if the number is no good.

16   You keep saying it was but you have no idea if the number is

17   good or not; is that correct?

18   A.        I don't know who lives at that house.

19   Q.        It may be Mr. Charlie Thomas, might it?

20   A.        In fact, I don't even know where the house is at.

21   Q.        It may be Mr. Charlie Thomas; is that correct?  He may

22   reside there?

23   A.        It may be.

24   Q.        Okay.  And the judgment hasn't been collected and the

25   only reason the judgment hasn't been collected is that this

T. Parker - Recross                          43

1    court entered a preliminary injunction enjoining you from

2    collecting the debt; is that correct?

3    A.        It stopped us from our efforts, yes, sir.

4    Q.        And in your forty-three years of doing automobile

5    financing, you never sued anyone in a Chapter 13; this was the

6    first time; is that correct?

7    A.        Not knowingly.

8    Q.        Okay.

9              MR. BROCK: Nothing further, Judge.

10             THE COURT: Mr. Morgan, anything else?

11                           RECROSS-EXAMINATION

12   BY MR. MORGAN:

13   Q.        Opposing counsel was inquiring as to your motivation

14   for filing a lawsuit in state court.  You didn't actually find

15   that car and observe its condition until some six months after

16   that case was brought in state court; correct?

17   A.        Correct.

18             THE COURT:   Anyone else?  Anything further of this

19   witness?

20             (No response.)

21             THE COURT:   Mr. Parker, thank you for your testimony.

22   You can stand down.

23             THE WITNESS: Thank you, sir.

24             MR. BROCK: Judge, I would call the plaintiff to the

25   stand.

F. Parker - Direct                              44

| 1 | THE COURT:   All right.  Come around and be sworn. |
| 2 | (FERNISA L. PARKER, WITNESS, SWORN) |
| 3 | DIRECT EXAMINATION |
| 4 | BY MR. BROCK: |
| 5 | Q.     Ms. Parker, I am going to ask that you speak loud.  I |
| 6 | know you have it in you.  Can you state your name, please? |
| 7 | A.     Fernisa L. Parker. |
| 8 | Q.     Okay.  Ms. Parker, what is your address? |
| 9 | A.     106 Radio Street, Enterprise, Alabama, 36330. |
| 10 | Q.     And are you employed? |
| 11 | A.     Am I employed now? |
| 12 | Q.     Yes, ma'am. |
| 13 | A.     With the USDA, federal government. |
| 14 | Q.     Okay.  Do you have any children? |
| 15 | A.     Yes, I have two kids, a six-year-old and a seven-year |
| 16 | old, a little boy and a little girl. |
| 17 | Q.     Are you a single mom or are you married? |
| 18 | A.     I am a single mom now. |
| 19 | Q.     Okay.  Now you filed bankruptcy with Mr. Poston's |
| 20 | office; is that correct? |
| 21 | A.     Yes. |
| 22 | Q.     Okay.  And in that bankruptcy, did you propose to |
| 23 | surrender a vehicle to First Southeast Acceptance? |
| 24 | A.     Yes.  During my court date when she asked me was I |
| 25 | willing to surrender and I told her, yes, I was willing to |

F. Parker - Direct                          45

1    surrender the Impala.

2    Q.       At the time that you filed bankruptcy, where was that

3    vehicle located?

4    A.       It was already at my dad's, in the yard.  It was torn

5    up way before I filed.

6    Q.       Where is that?  Is that the address in Brundage?

7    A.       That's exactly the address to my dad's residence.  He

8    has been there for years.

9    Q.       All right.  Does he live at 78 Private Road, 4436,

10   Brundage, Alabama?

11   A.       Yes, he do.

12   Q.       Okay.  And did that vehicle ever move from the date

13   you  filed  bankruptcy  until  it  was  finally  recovered  in

14   November?

15   A.       Never removed, never moved, never moved.

16   Q.       How do you know that?

17   A.       Because didn't no one have the keys to it but me.

18   Q.       And was there any other problem with the car?

19   A.       It was there.

20   Q.       Did it run?

21   A.       No.  It kept saying pass key fault.  Every time I got

22   ready to crank it, pass key fault, it never said nothing.

23   Q.       Okay.  Well, how did the vehicle end up at your

24   father's house?

25   A.       I rode down one Saturday, me and the kids, to go down

F. Parker - Direct                                    46

1    and spend the day with him and then that afternoon got ready to

2    come home and it was doing pass key fault, pass key fault.  So

3    my dad told me, let's push it in the yard, leave it there, if

4    you keep messing up with it, you will tear it up worse or

5    whatever before we find out what is wrong with it, and my

6    brother brought me home.

7    Q.      Okay.  Was that before you filed bankruptcy?

8    A.      That was way before I filed bankruptcy.

9    Q.      So the vehicle never moved from the address?

10   A.      Never.

11   Q.      Were you trying to hide the vehicle?

12   A.      Never.

13   Q.      Was the vehicle doing them any good?

14   A.      No, it wasn't.

15   Q.      Okay.  I'm going to show you what has been previously

16   marked as Plaintiff's Exhibit No. 7.  Before I do that, did

17   someone from Mr. Poston's office ever call you and ask you

18   where the location of the vehicle is?

19   A.      Yes, they did.

20   Q.      Okay.  And did you provide that information to them?

21   A.      I provided that information over the phone and she

22   said thank you, I will get it to them.

23   Q.      Did they also ask you for a phone number and a point

24   of contact?

25   A.      Yes, they did, and I gave them the number.

F. Parker - Direct                                47

1   Q.      Okay.  What is your father's name?

2   A.      My dad's name is Charlie Thomas.

3   Q.      What is his phone number?

4   A.      735-3287.

5   Q.      And  is  that  the  phone  number  that  appears  in

6   Plaintiff's Exhibit No. 7?

7   A.      Yes.

8   Q.      Is that still his phone number?

9   A.      That is still his number.

10  Q.      Do you know whether or not anyone ever phoned him?

11  A.      No, I never knew.  He never mentioned it.

12  Q.      So he remains at that address and that is his phone

13  number?

14  A.      Still to this day.

15  Q.      Now the vehicle was picked up on November 26 or 27; is

16  that correct?

17  A.      It was around November because my sister had called me

18  when she got off work.  She said the guys came –

19          MR. MORGAN: I'm going to object to hearsay.

20          THE COURT:   You are testifying that your sister told

21  you?

22          THE WITNESS: She called me and she said they came and

23  got the car –

24          THE COURT:   Sustained.

25  Q.      Was the vehicle ever picked up, yes or no?

```
                        F. Parker - Direct                    48
 1    A.      Yes.

 2    Q.      Okay.   All right.   Now you testified you filed

 3    bankruptcy, you surrendered the vehicle in your plan.   While

 4    you were in bankruptcy, did you ever have occasion to find out

 5    that the police were looking for you?

 6    A.      The what, excuse me?

 7    Q.      That the police were looking for you while you were in

 8    bankruptcy.

 9    A.      Well, yeah, I thought – I mean, for what reason, you

10    know, when I had heard that they had been to the house, serving

11    paper work or whatever, I never had an idea because I have

12    never been in trouble a day in my life.

13            MR. MORGAN: Objection, non-responsive.

14            THE COURT:   Sustained.

15    Q.      Did you learn that the police were looking for you

16    while you were in Chapter 13?

17    A.      Yes, I did.

18    Q.      Now more than once or just one time?

19    A.      More than once.

20    Q.      Okay.   The first time that you heard that the police

21    were looking for you, how did you find that out?

22    A.      When I came home – I was at a friend's house and, when

23    I came home, there was a guy at the time that was living with

24    us, he was telling me, he said, you know –

25            MR. MORGAN: Objection to hearsay, Judge.
```

```
                         F. Parker - Direct                    49
 1            THE COURT:   Sustained unless I hear an exception.
 2    Q.      So you did learn that the police were looking for you?
 3    A.      Yes.
 4    Q.      And you learned from whom?
 5    A.      The guy that –
 6    Q.      From whom, a name?
 7    A.      Oh, Leonard Lett, I am sorry.
 8    Q.      All right.  Just answer my questions.
 9    A.      Okay.
10    Q.      Okay.  How did that make you feel when you learned
11    that the police were looking for you?
12    A.      It scared me.
13            MR. MORGAN: I object on relevancy, Your Honor.  I
14    don't see what this has to do with –
15            THE COURT:   Overruled because it goes to punitive
16    damages.  In other words – and also potentially compensatory
17    damages.  Overruled.
18    Q.      Did the police come to your house?
19    A.      They came to the residence.
20    Q.      Okay.  And were you there when the police came to your
21    house?
22    A.      At the time, I wasn't, no, sir.
23    Q.      Okay.  But you learned that the police were looking
24    for you?
25    A.      After I got home.
```

F. Parker - Direct                    50

1    Q.        Okay.  And how did that make you feel?

2    A.        It scared me because I was like they are looking for

3    me, you know.  I didn't know what to do.  I started getting

4    nervous, thinking that something that I have done done and

5    didn't know I did, you know.  I didn't know what to do.  I just

6    went into a nervous rage worrying, scared.  I was like are you

7    sure, is there anything else, did he say anything.  I was just

8    going into a rage.  He said all I know is he was looking for

9    you and had paper work in his hand.

10   Q.        Okay.  You said that there had been more than one

11   occasion.  Did you subsequently learn that the police were

12   looking for you again?

13   A.        Again.  I got home from work one afternoon and I found

14   out that they had been back.

15   Q.        Did you know what the police were looking for you for?

16   A.        No, sir.

17   Q.        Did the police give any indication that they were just

18   serving you with civil process?

19   A.        No, sir.

20             MR. MORGAN: Objection and move to strike.  The police

21   haven't been produced for cross examination.

22             THE COURT:   Overruled.

23   Q.        So you had no indication of what they were looking for

24   you for?

25   A.        No, sir, I did not.

                          F. Parker - Direct                    51

1    Q.       Have you ever been arrested before?

2    A.       Never.

3    Q.       And you testified that you have two minor children; is

4    that correct?

5    A.       Yes.

6    Q.       And you are a single mom?

7    A.       Single mom.

8    Q.       Okay.  Did that concern you?

9    A.       Yes, it did.

10   Q.       Now how was it that you finally found out what the

11   police wanted you for?

12   A.       Like that Saturday, the day before they had came and

13   I wasn't at home, that Saturday I said, oh, I am fixing to

14   call.  I am fixing to call and see what is going on.  I don't

15   want them to think I am running.  Let's see what is going on.

16   And I did and the man was like, well, I will send another man

17   out with the paper work that we are supposed to be giving you.

18   I was like, okay, I will be here waiting for you this time.

19   Then they finally came.  It took about ten or fifteen minutes

20   and he came and I met him on the porch and he served me with

21   the paper work.

22   Q.       Okay.  What was the paper work?

23   A.       It was them versing me, First South.  It was on –

24   Q.       First Southeast Acceptance suing you?

25   A.       Yes.

F. Parker - Direct                          52

1    Q.      Okay.  Now from the time that the police – you heard

2    that the police were first looking for you to the time you

3    finally found out what it was about, how much time had expired?

4    A.      Oh, it had been about two, going on three weeks.  I

5    worried myself to death.

6    Q.      Did it affect your life other than worrying; did it

7    affect your job; did it affect your relationship with your

8    kids?

9    A.      Yeah.  I was withdrawn from the kids, worrying, didn't

10   know how to – really just thinking what if this – you know, it

11   is something they are really going to arrest me on.

12           I was thinking about oh, my God, what am I going to do

13   with my kids.  I am the only thing they have got, you know,

14   because my mom works a lot, you know.  I'm thinking like, okay,

15   DHR is fixing to step in and get my kids if I go to jail or

16   prison for something.  I was just thinking like that.  I was so

17   scared.

18           MR. BROCK: Nothing further, Judge.

19           THE COURT:  All right.  Cross-examine this witness.

20           MR. MORGAN: Thank you, Your Honor.

21           THE COURT:  Again, Mr. Morgan, you will have to get

22   near the podium or up here one.

23           MR. MORGAN: Judge, I'm going to stand right here.

24           THE COURT:  That's fine.  Just somewhere closer than

25   counsel table.

F. Parker - Cross                    53

1           CROSS EXAMINATION

2   BY MR. MORGAN:

3   Q.       Ms. Parker, you never hired an attorney to defend you

4   in the case in state court, right?

5   A.       I hired my lawyer for bankruptcy court and they

6   handled it from there.  Everything I ever got or received, I

7   went straight to my lawyer with it.

8   Q.       Right.  You hired Mr. Brock and Mr. Brock's office to

9   represent you in the bankruptcy?

10  A.       Yes, I did.

11  Q.       But you never hired anyone to defend you in that

12  action in state court?

13          MR. BROCK: Judge, I'm going to object to relevancy to

14  that.

15          MR. MORGAN: It goes to damages, judge, or lack

16  thereof.

17          MR. BROCK: We will stipulate that she didn't have any

18  representation.

19          THE COURT:  All right.  Move along.  I have heard

20  enough.  It is really not helping me resolve this.

21  Q.       In the action in state court there was a default

22  judgment and you didn't appear for trial, take any time off

23  from work or anything like that, right?

24  A.       No.

25  Q.       No wages of yours were ever garnished as a result of

F. Parker - Cross                              54

1  that judgment obtained in state court, right?

2  A.       No.

3  Q.       You haven't paid a fee to Mr. Poston or Mr. Brock for

4  their work in representing you in this adversary proceeding;

5  have you?

6  A.       Not yet, no.

7  Q.       You haven't received a billing statement from them for

8  their services; right?

9  A.       No.

10         MR. BROCK: Judge –

11         THE COURT:   I know the procedure.  Obviously it is

12 not to the point yet where she would have done so.

13 Q.       You don't have any damages that you can actually

14 document and show to this court in this case; do you?

15 A.       The only damages that I had was the worry-ation, the

16 withdrawing from my kids, at work, whatever, you know.

17 Q.       With all due respect, that is not what I asked.  You

18 don't have any damages that you could document, that you can

19 actually show to this court?

20 A.       No.

21 Q.       You are not out-of-pocket a single, solitary dime as

22 a result of the action being brought in state court, correct?

23 A.       That's right.

24 Q.       What, again, was your car doing in Brundage or near

25 Brundage at your father's house?

```
                        F. Parker - Cross                    55
```

1  A.       I rode it down there one day to see my dad and it

2  wouldn't crank when I got ready to come back home.

3  Q.       And from then on it was inoperable?

4  A.       It was in my dad's yard.

5  Q.       And it was inoperable?

6  A.       There wasn't no way nobody could have crunk it, got

7  inside it or nothing.

8  Q.       And your dad, he doesn't live near Brundage, Alabama,

9  correct?

10  A.       My dad lives right there in Brundage, Alabama, at that

11  residence.

12           MR. MORGAN: Judge, if I could refer to Plaintiff's

13  Exhibit 6.  I misspoke.  It is seven.

14  Q.       Ma'am, I'm going to ask you to refer to this

15  correspondence that has already been admitted into evidence.

16  Your lawyer asked you about that letter just a few minutes ago,

17  right?

18  A.       Yes.

19  Q.       So you have looked at it and you are familiar with it?

20  A.       Yes.

21  Q.       The address that is reflected on that letter, is that

22  your daddy's address in Pike County?

23  A.       That is my dad's address in Pike County.

24  Q.       And did you furnish that address to your lawyer?

25  A.       Yes, I did.

F. Parker - Cross                    56

1   Q.      Did you tell your lawyer that the car was at 78

2   Country Road, 4436, in Brundage?

3   A.      I told them the address, right there, my dad's

4   address.

5   Q.      Is that what you told them?

6   A.      That's the way I told them.

7   Q.      Well, did you know that to be an incorrect address?

8   A.      It is not incorrect.  That is where my dad lives at

9   right now.

10  Q.      You are saying that his address is 78 Country Road,

11  4436, in Brundage?

12  A.      The address that I gave my lawyers, that was the

13  address that I gave them because that is my dad's address.

14  Q.      So you are saying that that is the name of the road he

15  lives on, Country Road?

16  A.      The number on there is numbered. It is a number.

17  That's the road he lives on.

18  Q.      Is the name of the road Country Road or not?

19  A.      It is a number on a sign.  It is a blue sign.  It is

20  numbers.  That's it.

21  Q.      So you don't know the name of the road?

22  A.      It is not a name.  It is numbers.

23  Q.      Okay.  So the name of the road that he lives on is

24  not, in fact, Country Road; right?

25  A.      I guess not.  There are numbers up there.

F. Parker - Cross                    57

1    Q.      You don't know how many times someone might have

2    called you at your daddy's house trying to find somebody there

3    to ask about the car, right?

4    A.      Not many or not at all because my sister kept me

5    informed of who called, left messages, or whatever, because she

6    is on the voice mail.

7    Q.      But you don't live there?

8    A.      I do not live there.  I live in Enterprise, Alabama.

9    Q.      So you weren't there to actually receive any calls?

10    A.      No.

11    Q.      You don't know how many times that they might have

12    gone by the house or close to it?

13    A.      No.

14    Q.      You don't have any idea about that?

15    A.      One time because my sister –

16    Q.      But you don't know how many times, right?

17    A.      One.

18    Q.      You don't know how many times someone might have

19    driven around there in the area of that house –

20    A.      Okay.  I don't know about the area but I know they

21    only went to the home one time.

22    Q.      So you don't know what efforts or the extent of the

23    efforts that were made to locate that car?

24    A.      No, I don't know about all of that.

25    Q.      You said the police were involved in the service of

F. Parker - Cross                    58

1  the summons and complaint in the district court case.  Do you

2  mean the police or sheriff?

3  A.      The sheriff's department.

4  Q.      The sheriff's deputies?

5  A.      That's right.

6  Q.      Not the Enterprise P.D.?

7  A.      No, it was not Enterprise P.D.

8  Q.      You stay at Enterprise, right?

9  A.      Yes, I do.

10  Q.      So it was the sheriff's –

11  A.      Sheriff's department.

12  Q.      Do you live in the Enterprise city limits?

13  A.      Yes, I do.

14  Q.      The Enterprise police have jurisdiction with respect

15  to traffic and misdemeanor and other criminal related cases

16  within the Enterprise city limits of police jurisdiction,

17  right?

18          MR. BROCK: I'm going to object to the recitation of

19  what the law is.

20          THE COURT:   Sustained.

21          MR. MORGAN: I withdraw it.  Nothing further.

22          THE COURT:   Redirect.

23          MR. BROCK: No redirect, Judge.

24          THE COURT:   You may stand down.  Thank you for your

25  testimony.  Mr. Brock, any others?

```
                        Sanders - Direct                    59

 1              MR. BROCK: I'm going to call Ms. Sanders to the stand

 2      real quick.

 3              MR. MORGAN: Judge, I'm going to object.  That witness

 4      wasn't  designated  as  being  a  witness  in  the  pretrial

 5      disclosures.  I would argue that precludes her testimony.

 6              MR. BROCK: It was listed in pretrial disclosure if you

 7      will take a look at it.

 8              MR. MORGAN: If I misspeak, I sincerely apologize.  I

 9      just didn't recall it, Your Honor.  Judge, I beg to differ.

10      The  witnesses  in  the  plaintiff's  pretrial  disclosure  is

11      indicated as being Fernisa Parker and Thomas G. Parker.  Okay.

12      Witnesses who may be called, Johnnie Sanders.  Is that who

13      you're calling?

14              MR. BROCK: That is who I am calling.

15              THE COURT:  Come around if you will, please.

16              (JOHNNIE SANDERS, WITNESS, SWORN)

17                        DIRECT EXAMINATION

18      BY MR. POSTON:

19      Q.      Ms. Sanders, you have been sitting back there.  You

20      know you're going to have to talk loud, okay.

21      A.      Okay.

22      Q.      Are you going to do that?

23      A.      Yeah, I can.

24      Q.      Okay.  Thank you.  Ms. Sanders, would you state your

25      complete name for the record, please?
```

```
                        Sanders - Direct                    60
```

1     A.      Johnnie Mae Sanders.  My name?

2     Q.      Your name, yes, ma'am.

3     A.      Johnnie Mae Sanders.

4     Q.      And, Ms. Sanders, what is your –

5     A.      I work in a restaurant.  That's my daughter.

6     Q.      Hang on just a minute.  What is your address, Ms.

7  Sanders?

8     A.      106 Radio Street, Enterprise, Alabama.

9     Q.      Now tell me where you work.

10    A.      Cutts Restaurant.  I have been there for ten years.

11    Q.      Any place else that you work?

12    A.      Well, I do houses on the side every once in a while

13 but I am mainly at Cutts.

14    Q.      Mainly at Cutts?

15    A.      Yes.

16    Q.      Ms. Sanders, who lives in the house with you?

17    A.      My daughter, my two grandkids, and my adopted son.  I

18 call him another name but his name is (inaudible), but I call

19 him Goochie.

20    Q.      How many children do you have?

21    A.      One.

22    Q.      One child?

23    A.      That's her.

24    Q.      Who is her?

25    A.      Fernisa Parker.

Sanders - Direct                                61

1    Q.      And Ms. Parker lives in the home with you?

2    A.      Yes.

3    Q.      How often do you see Ms. Parker?

4    A.      I see her everyday.

5    Q.      What I would like to ask you about is you heard the

6    testimony about this time that she said police, we have

7    established that it is the sheriff, that the sheriff was

8    looking for her.  Did you have the occasion to view and to

9    interact with Ms. Parker during this time?

10   A.      Yes, I did, because I know how she is.

11   Q.      Okay.  Why don't you tell me, then, what was her

12   demeanor during this time that the sheriff was looking for her?

13   A.      Well, she couldn't sleep, she couldn't eat.  She just

14   was nervous all the time and I told her, I said, well, why

15   don't you slow down, baby, everything will be all right but,

16   you know, I would be the same way.  She had been – they are

17   there all the time, harassing her like that, serving her with

18   papers and things like that, but she couldn't sleep or eat.

19   She couldn't do nothing, just up and about all the time.  And

20   I gets up at night and check on her and my two grand kids and

21   she just in there crying, you know, she just couldn't be still,

22   and I just told her everything would be all right, you know,

23   and she just was out of hand with everything and all of this

24   going on.

25   Q.       Ms. Sanders, how does Ms. Parker normally act?

Sanders - Cross                                           62

1    A.         Just like her regular self.  She just act like she

2    just don't have nothing, you know –

3    Q.         Tell me how her normal self is?

4    A.         Without being with all of this, going what she is

5    going  through,  she  is  just  a  sweet  daughter.   She  works

6    everyday.  She takes care of her kids and me, although I work,

7    too, but she is a real sweet person even though she is my

8    child.  I ain't never had no problems out of her at all.

9              MR. POSTON: That's all I have, Your Honor.

10                         CROSS EXAMINATION

11   BY MR. MORGAN:

12   Q.         Ms. Sanders, to your knowledge, as a result of all of

13   the business you were talking about just a minute ago when the

14   other lawyer was asking you his questions, your daughter never

15   sought  any  medical  attention  or  incurred  any  medical  bills,

16   right?

17   A.         No.

18   Q.         All right.  To your knowledge, she never missed any

19   work as a result of that; right?

20   A.         No.

21   Q.         To your knowledge, she never obtained any counseling,

22   any psychological therapy or anything of that nature; right?

23   A.         No.

24              MR. MORGAN: Thank you, ma'am.

25              THE COURT:   Anything further?

63

1          MR. BROCK: Judge, we rest.

2          THE COURT:    All right.  This witness can come down.

3     Mr. Morgan, do you have any witnesses?

4          MR. MORGAN: Judge, I have already asked my client the

5     questions I intended to.

6          THE COURT:    So no further?

7          MR. MORGAN: I don't have any other witnesses to call.

8          THE COURT:    Close, Mr. Brock.

9          MR. BROCK: Judge, I guess I would close simply by

10    stating we have a defendant here who has been in the business

11    for  forty-three  years.   He  knows  the  automobile  finance

12    business.  He knows that he cannot sue anyone while he is in

13    chapter thirteen.   That is why he hasn't done it in forty-

14    three years.

15          Judge, I think that we need to send a message through

16    this court that, you know, you're going to have to follow the

17    bankruptcy laws.  We are not dealing with somebody who is, you

18    know, fresh into the credit business.  We are dealing with a

19    seasoned - I dare you find anybody more seasoned in the

20    automobile financing business.  He is suing debtors who are in

21    chapter thirteen who are surrendering their collateral.   They

22    took no real effort to find this vehicle.  And I submit that

23    they didn't want the vehicle, judge, because they knew it

24    didn't run.  They made one phone call and sent one letter, and

25    then they sued the debtor who was in chapter thirteen.

64

1          Judge, I would just respectfully request that you

2     enter judgment in favor of the plaintiff and award her punitive

3     damages so that this won't happen again in the future.

4          MR. MORGAN: May I respond, Judge?

5          THE COURT:  Certainly.

6          MR. MORGAN: Judge, if we, if I misinterpreted the

7     effect or the intent of Judge Sawyer's order back in April of

8     last year –

9          THE COURT:  Well, you most definitely did.

10         MR. MORGAN: And I will man up to that.

11         THE COURT:  You did and I think there is a special

12    relationship between the bench and bar and very seldom – I go

13    out of my way to be supportive of and noncritical of lawyers,

14    but I noticed that you are the lawyer in the bankruptcy

15    proceeding for this defendant and you are the same lawyer that

16    brought this suit in the state court for a money judgment.  If

17    you had been named defendant in this case, which you could have

18    been, the stay extends not just to the creditor but any entity

19    who seeks to collect a debt, then I think I would have found a

20    punitive damages lay against you.

21         I have taken your argument away, but it seems to me,

22    as far as First Southeast is concerned, your client testified

23    that he didn't know what that order meant, he relied on his

24    lawyer, and his lawyer should have known and took an action in

25    face of that.  I see no ambiguity.  I find that unbelievable.

65

1        MR. MORGAN: Well, Judge, again, I will man up to that.

2   I will man up to that, but there was no malicious intent on the

3   part of these folks –

4        THE COURT:    But let me mention to you malicious

5   intent, as we started this off earlier this afternoon, intent

6   to violate the stay is not the question.   The question is

7   intend to do an act which violates the stay.  Do you see the

8   difference?

9        MR. MORGAN: Yes, sir, I see that distinction.  Yes,

10  sir, I do.  But they are asking that punitive damages be

11  assessed against this man's company.  I would argue to the

12  court that that is absolutely not fair.  They did nothing in an

13  attempt to violate or defy this court's order, to thumb their

14  nose at the court, nothing of that sort, absolutely nothing of

15  that sort, and they shouldn't be punished for such because they

16  didn't engage in any of that type of behavior.

17          I don't think that anyone has even alleged that they

18  have from everything that has been put before the court.   I

19  don't think that that could be inferred from anything that has

20  been put before the court.

21        THE COURT:    Well, I am not sure of that but I am

22  persuaded and it does to me speak to the issue of punitive

23  damages, about what the defendant intended or meant to do.

24  And, here, I'm not so sure if reliance on counsel and reliance

25  on counsel goes to the issue.   It certainly does go to the

66

1    issue of punitive damage and, here, it relied on counsel's

2    faulty advice.

3           MR. BROCK: And, Judge, I would just say that you can't

4    hide behind your counsel. This is his agent. He hired him.

5    He made the choice of hiring him. He has been in the business

6    for forty-three years. This isn't his first time doing this.

7    So I –

8           THE COURT:  Well, let me make this partial finding,

9    and I want to consider further the issue of punitive damages,

10   but I do find this is as clear a case as ever has been made

11   that there was a willful violation of the automatic stay. This

12   creditor willfully filed a suit for a money judgment against

13   the debtor. It intended to do that. How did the suit get

14   filed if it didn't intend to file a suit? It willfully did an

15   act to collect a debt knowing of the bankruptcy stay. So there

16   is a willful violation of the stay, which that entitles

17   recovery of compensatory damages, including attorney fees.

18          So I am making a partial finding that there should be

19   an affidavit for allowance of attorney fees filed, and I am

20   going to give you – is twenty days enough time to do that?

21          MR. BROCK: Yes, sir.

22          THE COURT:  Twenty days to file not a motion but an

23   affidavit for the allowance of attorney's fees, and that will

24   be given.

25          Then the issue of compensatory damages, I am going to

67

1    have to study further this testimony with regard to the

2    debtor's inability to sleep, her inability to eat.  I have

3    ruled in a prior case just recently about emotional damages and

4    when they are available, and I want to just compare the

5    evidence here to what I feel like the law is.  So I'm not going

6    to rule on compensatory damages today, nor will I rule on

7    punitive damages, and I probably should have reserved my

8    comment with regard to punitive damages, but I do think that,

9    here, this creditor, I am persuaded that this creditor relied

10   on counsel in filing the suit.  Counsel is not a defendant.

11   Could be, could have been but is not.

12             MR. BROCK: Still could be.

13             THE COURT:  All right.  Anything further?

14             MR. MORGAN: Nothing further in the way of argument,

15   Judge.

16             THE COURT:  Pardon me, sir?

17             MR. MORGAN: Nothing further in the way of argument

18   that I wish to present.

19             THE COURT:  All right.  Then the court is in recess

20   and I will let you have an order.  I will take it this is

21   submitted at the end of the twenty days.

22             Court is adjourned.

23             (Off the record at 2:48 p.m.)

68

C E R T I F I C A T E

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

      /s/ Patricia Basham

      Patricia Basham, Transcriber

      Date:  August 8, 2007